429 So.2d 550 (1983)
OPELOUSAS GENERAL HOSPITAL, Plaintiff-Appellee,
v.
Augusta GUILLORY, Defendant-Appellant.
No. 82-545.
Court of Appeal of Louisiana, Third Circuit.
March 21, 1983.
Otha Curtis Nelson, Baton Rouge, for defendant-appellant.
Watson, Blanche, Wilson & Posner, Mary Thompson and George Anding, Jr., Baton Rouge, Voorhies & Labbe, Marc Judice, Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
FORET, Judge.
Opelousas General Hospital (plaintiff) instituted these proceedings seeking a declaratory judgment and injunction, naming Augusta Guillory as defendant thereto. Plaintiff sought a judgment declaring defendant's medical malpractice action against it to have prescribed, and an injunction prohibiting defendant from filing any further claims or proceedings against it based upon that cause of action.
*551 The trial court, after hearing plaintiff's rule to show cause, rendered judgment in favor of plaintiff, declaring defendant's medical malpractice claim against it, as set forth in the proposed claim filed with the Commissioner of Insurance on April 16, 1981, to have prescribed. The trial court further rendered judgment in favor of plaintiff, permanently enjoining defendant from filing any further claims or proceedings against it based upon or arising out of the cause of action declared to have prescribed.
Defendant appeals from that judgment, contending that the trial court committed manifest error in finding that her claim against plaintiff had prescribed.

FACTS
In order to provide the reader with a better understanding of the issue involved here, we will quote the facts from an earlier opinion rendered by this Court in Guillory v. Buller, 398 So.2d 43 (La.App. 3 Cir.1981). That case concerned an appeal by defendant from the trial court's granting of a directed verdict in favor of Dr. Daniel H. Buller and Dr. Tyler T. Kent, dismissing defendant's medical malpractice action against them. We affirmed the trial court judgment. The facts, as set forth in Guillory v. Buller, are as follows:
"This is a medical malpractice suit brought by Augusta Guillory against Dr. Daniel H. Buller and Dr. Tyler T. Kent in connection with two surgical procedures performed on the plaintiff's left armpit by Doctors Buller and Kent on May 30th and July 20, 1978, respectively.
"On May 29, 1978, plaintiff was admitted to Opelousas General Hospital by her doctor, Dr. August C. Terrence, for treatment of an infection in her left armpit. At Doctor Terrence's request, Doctor Buller, a general surgeon, examined plaintiff the next day, May 30th, and diagnosed her condition as the disease of axillary hidradenitis suppurativa with an abscess formation. In layman's terms, Doctor Buller described plaintiff's condition as "a nest of boils in the armpit." The condition was also described as an infection of the sweat glands in the armpit.
"Doctor Buller explained that before he could provide treatment that would cure plaintiff of her disease, the infection had to be cleared. To achieve this result, he proceeded to drain the pus from the abscess. The next day, the plaintiff was discharged from the hospital and was told to return at a later date so Doctor Buller could check her progress.
"Doctor Buller next examined plaintiff on July 18, 1978, and determined that her infection had been cleared by the minor surgery performed on May 30th. He felt that the chronic or long term phase of her disease would best be treated by removal of all of the diseased tissue and so recommended this to plaintiff. He also referred to her [sic] Doctor Kent for the surgery because he felt Doctor Kent was more capable than he to perform the particular operation that plaintiff needed.
"On July 20, 1978, Doctor Kent removed the entire hair-bearing portion of plaintiff's left armpit, an area measuring 9 centimeters by 4 centimeters (about 6 square inches). The surgery was designed to rid plaintiff of her disease. He then closed the wound by suturing the remaining skin together. He allowed plaintiff to wear a sling to immobilize her arm while the skin healed together. Plaintiff was discharged from the hospital on July 24th but returned on July 27th, August 3rd, and August 8th, during which visits Doctor Kent performed piecemeal removal of the sutures, a common procedure for this type of operation. Doctor Kent also examined plaintiff on August 22nd and encouraged her to use and exercise her arm in order to restore its mobility.1
"Doctor Kent saw the plaintiff for the last time on September 26, 1978. At this examination he was dissatisfied with the progress she had made on her own and recommended that she undergo physical therapy. However, instead of following his advice (she did not keep the physical therapy appointment made by Doctor *552 Kent), she sought the advice of other doctors."
Defendant's claim against plaintiff is set forth in paragraphs X and XI of her proposed petition, which read as follows:
"X.
"Plaintiff claims that Opelousas General Hospital through Dr. D.H. Buller and Dr. Tyler J. Kent were negligent in that they failed to properly inform her as to the amount of skin that would be removed from her armpit or prescribe appropriate therapy for her, as a result the Plaintiff was required to have surgery to correct or attempt to correct the hospital and it's staff breach of contract and duty owed to plaintiff.
"XI.
"Opelousas General Hospital was also negligent in failing to keep proper records of scheduled appointments for the plaintiff causing her not to be examined by the doctor on the date she was supposed to have been after surgery."
With regard to the two paragraphs reproduced above, it must be remembered that "plaintiff" refers to Augusta Guillory (defendant in the action sub judice).
As did the trial court, we find it strange that plaintiff (Opelousas General Hospital) failed to plead that defendant was unable to hold it liable to her under the doctrine of respondeat superior, as its two alleged employees (Drs. Buller and Kent) were found to have committed no acts of negligence in their treatment of defendant. See Guillory v. Buller, supra.
However, as plaintiff failed to raise this issue in the trial court, we will give no consideration to it on appeal.

PRESCRIPTION
Defendant contends that the trial court committed manifest error in finding that her medical malpractice claim against plaintiff had prescribed. Defendant argues that she was unaware of the fact that she had a medical malpractice claim against plaintiff until April 22, 1980, the last day of the trial, which resulted in the judgment affirmed in Guillory v. Buller, supra.
LSA-R.S. 9:5628 provides:
"§ 5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
Added by Acts 1975, No. 808, § 1. Amended by Acts 1976, No. 214, § 1." (Emphasis ours.)
Defendant's suit against Drs. Buller and Kent was filed on May 3, 1979. Certainly, on that date, defendant must have discovered the alleged act, omission, or neglect of Drs. Buller and Kent. However, in her deposition introduced in evidence, defendant admitted that she was having trouble moving her left arm approximately one month after Dr. Kent had performed surgery on her on July 20, 1978. As noted in Guillory v. Buller, supra, defendant last saw Dr. Kent on September 26, 1978, approximately eight weeks post-surgery. Defendant then began to see other doctors, and, in fact, saw Dr. Edgar T. Breaux on the same day that she last saw Dr. Kent. Dr. Breaux testified he saw defendant on referral from a Mr. Begnaud one time, and was told by defendant that she had been operated on approximately two months earlier. She *553 was apparently complaining of an inability to move her left arm, and Dr. Breaux referred her to a physical therapist. Defendant again failed to keep an appointment made for her.
Dr. Gregory M. Savoy testified that he first saw defendant on October 5, 1978. Apparently, she was still complaining of being unable to move her left arm. Dr. August C. Terrence treated defendant before and after the surgery performed by Dr. Kent. He testified that plaintiff complained of being unable to move her arm in the latter part of 1978, and she asked him to refer her to some other doctor. Defendant also saw Dr. Joseph G. Patton on September 28, 1978, two days after she was last seen by Dr. Kent. Again, she was complaining of an inability to move her left arm. There is more testimony in the record to this effect, but we see no need to discuss all of it. It is apparent that plaintiff had discovered the condition of which she complains before January 1, 1979.
The record contains a letter, introduced in evidence, from the Office of the Commissioner of Insurance, which was sent in response to a letter received by that office from plaintiff's attorney. That letter states, in pertinent part, that:
"In response to your letter of February 8, 1982, the above claim was filed with this office on April 16, 1981."
The "above claim" refers to defendant's proposed petition setting forth her medical malpractice claim against plaintiff. Under the provisions of LSA-R.S. 9:5628, defendant had one year from the date of the discovery of the alleged act, omission, or neglect, within which to bring her medical malpractice claim. We have already found this date to have been no later than January 1, 1979. Plaintiff's claim, filed with the Commissioner of Insurance on April 16, 1981, has clearly prescribed.
We also find that defendant's medical malpractice claim against plaintiff, based on allegations that plaintiff's employees failed to obtain her "informed consent" to the operation performed by Dr. Kent, has prescribed. In Guillory v. Buller, supra, on page 48, we noted that:
"On several occasions during the trial, plaintiff's counsel attempted to raise the issue of informed consent through his questioning of witnesses."
However, defendants to that action objected to the introduction of such evidence on the grounds that it would enlarge the pleadings. The trial court sustained the objections, and we found these rulings to be correct, as the objections were timely and plaintiff failed to make a motion for an amendment of the pleadings. As we have noted, defendant instituted that action on May 3, 1979, and was therefore aware of her claim based on the alleged failure of plaintiff's employees to obtain her "informed consent" on that date. Thus, more than one year had elapsed between the time plaintiff discovered her claim on this basis, and the date on which she filed her proposed complaint with the Commissioner of Insurance (April 16, 1981). LSA-R.S. 9:5628 specifically provides that such a claim shall be brought, "... within one year from the date of discovery of the alleged act, omission or neglect; ...".

ISSUES NOT RAISED
The parties failed to raise any issue in the trial court, or in this Court, as to whether the declaratory judgment procedure (See LSA-C.C.P. Articles 1871-1883) was the proper method for plaintiff to use in obtaining a judgment on its peremptory exception of prescription. This Court has some doubts about the propriety of using the declaratory judgment procedure in such a manner, when the party against whom the exception is urged has filed no claim in a court of law. However, because the defendant failed to raise this issue, we will pretermit any discussion or decision thereon.
By Acts 1982, # 674, § 1, the legislature enacted the following provision designated as LSA-R.S. 40:1299.47(B)(1) and (2), which provide:
"B. (1) No action against a health care provider covered by this Part, or his insurer, may be commenced in any court of *554 this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section and an opinion is rendered by the panel. By agreement of both parties, the use of the medical review panel may be waived.
(2) A health care provider, against whom a claim has been filed under the provisions of this Part, may raise the preemptory exception of prescription in court at any time, without need for completion of the review process by the medical review panel. If the court finds that the claim had prescribed prior to being filed, the panel, if established, shall be dissolved.
Amended by Acts 1982, No. 674, § 1." (Emphasis ours.)
This statute, being a procedural one, may be applied retroactively. However, the parties make no mention of this statute, and obviously were unaware of its enactment. However, we cannot resist the urge to note that the statute, at best, is ambiguous and confusing. There is no known article or articles in our Code of Civil Procedure that permits the raising of a "peremptory exception of prescription in court" where no lawsuit has been filed in that court. The statute does not designate in which "court" that the exceptor may file his peremptory exception. Does "Court" mean a city, parish, district, or some other type court? Would the proper venue be in the plaintiff's domicile, the defendant's domicile, or the Insurance Commissioner's domicile, or the domicile of the medical review panel, etc., etc.? Does the statute create a new type of peremptory exception of liberative prescription, and are the articles of the Code of Civil Procedure concerning peremptory exceptions amended and/or supplemented by this new statute? While the end being sought by the statute is fairly obvious, e.g., to prevent a malpractice claimant from scattergunning a lawsuit against every physician who has ever seen the plaintiff, no matter how many years past, the means by which the legislature has endeavored to achieve that end leaves much to be desired from a judicial point of view, and it is hoped that the legislature will take steps to re-enact or amend the statute to bring it into proper perspective.
Finally, we note that the defendant raised no issue concerning the availability of the injunction procedure to prohibit a party from bringing an action in a court of law.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.
DOMENGEAUX, J., concurs with written reasons.
DOMENGEAUX, Judge, concurring.
I respectfully concur in the result, being of the opinion that defendant's malpractice action against the plaintiff hospital has prescribed, and that the declaratory judgment procedure utilized by the hospital was not improper in order to seek such prescriptive relief.