| .MAX N. TOBIAS, JR., Judge.
In these consolidated applications for supervisory writs of relators, Jan T. McClanahan, M.D., and Chalmette Medical Center, Inc. (“Chalmette Medical Center”), we grant certiorari to review judgments of the trial court overruling exceptions of prescription.
On 21 February 1999, the plaintiff, Eloise Poche (“Ms.Poche”), sought treatment at the Chalmette Medical Center emergency room for an abdominal abscess. The emergency room physician ordered a consultation by Dr. McClanahan, a general and vascular surgeon. On 22 February 1999, Dr. McClanahan performed surgery to excise and drain the abscess.
On 5 March 1999, Ms. Poche sought emergency room treatment at Lakeland Hospital due to a recurrence of the infection in her abdomen. That same day, she underwent a surgical excision of the infected wound. On 6 March 1999, Richard D. Vallette, M.D., operated on Ms. Poche a second time, evacuating, cleansing, and packing the wound. Following her discharge from Lakeland Hospital, Ms. LPoche was treated at a rehabilitation facility on Canal Street in New Orleans until sometime in June of 1999.
Ms. Poche filed a medical malpractice complaint with the Louisiana Patients’ Compensation Fund on 24 May 2000, naming as defendants Dr. McClanahan, Chal-mette Medical Center, and Christopher Bloom, M.D., her internist. She alleged that the defendants committed medical malpractice when they “negligently performed an operation removing an abscess from [her] abdominal wall” and “failed to properly dress and maintain [her] wound after the operation.” Ms. Poche claimed that the alleged malpractice caused her to “undergo extensive corrective treatment.” Specifically, Ms. Poche asserted that the alleged malpractice occurred between 21 February 1999 and 25 February 1999.
In response to the medical malpractice complaint, Dr. McClanahan filed an exception of prescription and Chalmette Medical Center filed a Petition to Assert Prescription and an Exception of Prescription pursuant to La. R.S. 40:1299.47B(2)(a). Ms. Poche’s testimony at the hearings of the exceptions establishes that following her discharge from Chalmette Medical Center she experienced problems with her abdominal wound in late February or early March 1999. Despite this testimony, the trial judge overruled the exception of prescription. The court’s reasoning was essentially the same on both exceptions; in no. 2002-C-1721, the trial court held:
I am going to rule again in the same manner that the prescription does not begin until after the lady is discharged even though the defendants were not providing continuous care for this lady. She was being | scared for as a result of problems which she sustained on the original matter. I am not making a judgment call yet on whether there was malpractice or there wasn’t malpractice. If later, you feel like someone has hurt you, I don’t blame you for going to another facility to seek treatment. If that treatment is for the malady that you incurred or which hurt you from the other facility, until you are discharged, I am not going to place a burden on anyone to leave their hospital bed and seek legal counsel. I don’t think the law is that unfeeling that you have to lay in your hospital bed and worry about suing somebody until you are discharged.... [T]he prescription does not begin to run until after she is released from the rehabilitation center.
La. R.S. 9:5628, relative to prescriptive periods for medical malpractice actions, provides, in pertinent part:
*602 A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Recently, in the case of Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502, the Louisiana Supreme Court held that:
La.Rev.Stat. Ann. 9:5628 provides two prescriptive limits to bring a medical malpractice action, either one year from the date of the alleged act, omission, or neglect or within one year from the date of discovery of the alleged act, omission, or neglect, but not more than three years from the alleged act of malpractice. A petition should not be found prescribed on its face if it is brought within one year of discovery and facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient. |4In determining whether the date of discovery interrupted prescription, the ultimate issue is the reasonableness of the patient’s action or inaction, in light of his or her education, intelligence, the severity of the symptoms, and the nature of defendant’s conduct.
Id. at p. 18, 828 So.2d at 514.
As to when prescription commences, the Supreme Court in Campo stated:
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Percy v. State, E.A. Conway Memorial Hosp., 478 So.2d 570 (La.App. 2 Cir.1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Ledet v. Miller, 459 So.2d 202 (La.App. 3 Cir.1984), writ denied, 463 So.2d 603 (La.1985); Bayonne v. Hartford Insurance Co., 353 So.2d 1051 (La.App. 2 Cir.1977); Opelousas General Hospital v. Guillory, 429 So.2d 550 (La.App. 3 Cir.1983). Nevertheless, a plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condi *603 tion might be treatment related. Griffin v. Kinberger, 507 So.2d 821 (La.1987).
Id. at pp. 11-12, 828 So.2d at 510-11.
Ms. Poche’s testimony at the exceptions reflects that during the week immediately following her discharge from Chalmette Medical Center, her wound | .¡worsened and turned red. She experienced an increase in pain and a foul odor developed at the wound site. Ms. Poche further testified that during the week of 25 February 1999, her wound turned from red in color to black. She acknowledged that she thought the change in her wound condition was “unusual” and a “problem” that required emergency medical treatment. In fact, Ms. Poche underwent emergency surgery on the abdominal wound at Lakeland Hospital just one week following her 25 February 1999 discharge from Chalmette Medical Center.
Clearly, in view of her testimony, Ms. Poche, a certified nursing assistant, was aware of her claim of medical malpractice before 24 May 1999, one year before the date she filed her medical malpractice complaint. Ms. Poche had sufficient knowledge to excite attention and put her on guard for further inquiry when she realized the unusual problems with her abdominal wound and sought emergency medical treatment at Lakeland Hospital on 5 March 1999. Thus, Ms. Poche should have filed her medical malpractice complaint within one year from that date or 5 March 2000. Her complaint filed on 24 May 2000 had prescribed.
In denying the exceptions of prescription, the trial court concluded that prescription commenced when Ms. Poche was discharged from the rehabilitation center. However, Ms. Poche neither alleged facts with particularity in her complaint nor testified at the trial of the exception of prescription to show that she was unaware of malpractice prior to her being discharged from the rehabilitation center. Therefore, we find that the trial court erred holding that prescription commenced when Ms. Poche was discharged from the rehabilitation center and in overruling the exceptions of prescription.
Accordingly, the judgment of the trial court overruling Dr. McClanahan’s and Chalmette Medical Center’s exceptions of prescription are reversed. Judgment |fiis hereby rendered in favor Dr. McClanahan and Chalmette Medical Center, maintaining their exceptions of prescription and dismissing Ms. Poche’s claims against them.
REVERSED AND RENDERED.
ARMSTRONG, J., dissents with reasons.