_JjMOORE, J.
Billy R. Williams (“Billy”) and his wife, Sharon A. Williams[1] (“Sharon”), appeal the trial court’s granting of Tri-State Physical Therapy, Inc. (“Tri-State”) and Amy Barnes’ (“Amy”) Exception of Liber-ative Prescription on November 4, 2002, which dismissed Billy’s claims with prejudice. We find the trial court was manifestly in error and clearly wrong in sustaining the exception and thus, we reverse the *993 judgment of the trial court and remand for further proceedings.

Factual Background

Billy was involved in a work-related accident on or about June 15, 1997, when he injured his lower back at the L5-S1 lumbar disk while moving the fifth wheel on his tractor-trailer rig. At the time of his injury, Billy was employed as a truck driver for Roadway Express (“Roadway”). He initially presented himself for medical care in Texas where he was working. On June 1, 1997, he sought the medical care of Lewis C. Jones, M.D. of the Orthopaedic Specialist Center (“the Center”) in Shreveport, Louisiana, for his back injury. While receiving medical treatment at the Center, Billy began treatment under the care of Austin Gleason, M.D. (“Gleason”), a partner of Dr. Jones. Gleason prescribed a conservative treatment regimen for Billy including physical therapy and medication for his rehabilitation.
Billy was referred to Tri-State by Gleason for therapy which included a “work hardening” program to assist Billy in getting back to his job. The relationship between Gleason and Tri-State was such that Gleason would border certain physical therapy routines and tests for Billy, and Tri-State in turn would report to Gleason regarding Billy’s therapy performance and test results. Tri-State made no decisions relative to Billy’s therapy regimen and relied solely on the therapy procedure directives of Gleason. During Billy’s therapy program, Roadway required Billy to undergo a Functional Capacity Evaluation (“FCE”) with Tri-State, which was ordered by Gleason to ascertain Billy’s medical standing for returning to work. Billy’s therapy records indicate that as of January 20, 1998, he was successfully lifting 25 pounds, which was required of him to be able to return to work.
On or about January 28, 1998, Gleason noted in a Physical Therapy Team Conference Report (“Report”) to Tri-State, that although Billy had achieved his lifting potential of 48 pounds through therapy and work hardening, Gleason was concerned that the FCE requirement of lifting 100 pounds would expose Billy to an undue risk of re-injuring his back. The FCE was scheduled for February 13, 1998 and was conducted by therapist, co-defendant and co-appellee, Barnes. During the FCE, Billy was required to lift 100 pounds of weight under the supervision of Barnes, and during the lift, Billy experienced severe pain in his lower back. Gleason’s post-February 13, 1998 Progress Report (“report”) notes reflect that Roadway required that Billy successfully lift 100 pounds during the FCE caused Gleason some concern.
Following the FCE, Billy continued treatment with Gleason for his back pain, as well as therapy with Tri-State, as ordered by Gleason. Gleason’s report of June 8, 1998, shows that because Billy was still | ¡¡experiencing pain during therapy treatments he advised Billy that his injury sustained during the FCE on February 13, 1998 had “aggravated his situation and set him back significantly.” Following the February 13, 1998 re-injury, Billy experienced the ebb and flow of progress and set-backs, as are reflected in Gleason’s medical chart, records and reports. For example, Gleason noted on March 19, 1998 that Billy’s February 13, 1998 injury was hopefully a “temporary exacerbation,” while the April 3, 1998 progress report noted that Billy seemed to be recovering from the February 13, 1998 incident. Gleason’s May 1998 report notes indicate that Billy was continuing to improve, although with continued back pain. Gleason’s June reports indicated that while Billy was engaged in work hardening to return to work, the February 13, 1998 in *994 cident aggravated Billy’s back condition and set him back significantly.
On June 17, 1998, in a Physical Therapy Team Memo, Gleason removed work hardening from Billy’s regimen due to the back pain Billy was experiencing. Gleason then decided to treat Billy with medication only. On June 29, 1998, Gleason’s report noted that although Billy continued with therapy, his back problem continued to worsen. As a result, Gleason ordered a repeat MRI to check for any lumbar spine changes in Billy’s lower back at the L5-S1 disk level. On July 1, 1998; Gleason noted that the repeat MRI, administered that day, showed that Billy’s degenerated and bulging disk at L5-S1 was “worse” than reflected on the previous, pre-February 1998, MRI. That same day, Gleason showed Billy the MRI results. Gleason then concluded that conservative treatment for Billy had [4failed and recommended surgical intervention. His report noted that Billy was obtaining a second opinion. Gleason’s July 22, 1998 report reflected that a second opinion relative to Billy’s back injury and treatment was provided by Carl Goodman, M.D., who recommended further physical therapy prior to surgery. In January 1999, Billy underwent a surgical fusion and fixation in his lumbar spine at L5-S1. Following thereafter, Billy continued therapy treatment with Tri-State until October 1998 and with Gleason until June 29,1999.
By certified letter from their attorney dated June 7, 1999, Billy filed with the Louisiana Division of Administration (“Division”), a claim for medical malpractice against Tri-State, Gleason, Barnes, the Center, and Liberty Mutual Insurance Company. Billy was advised by certified mail dated July 30,1999 from the Malpractice Insurance Director for the Patient’s Compensation Fund (“PCF”) that TriState was not qualified under the PCF. Later, by certified letter dated September 8, 1999, Billy was notified by the PCF that Barnes was likewise not qualified under the PCF.
On September 17, 1999, Billy instituted suit in the First Judicial District Court against Tri-State and Barnes for the injuries Billy received on February 13, 1998. Tri-State and Barnes filed an Exception of Prescription alleging Billy’s claim was prescribed on its face. The trial court set the exception for hearing on September 30, 2002. At the hearing, the parties entered into the following stipulations:
1. All records and bills associated with the care provided to Billy by Gleason and Tri-State were deemed authentic and admissible into evidence;
|b2. Billy filed a request for a Medical Review Panel on June 7,1999; and
3. Billy received notification from the PCF dated July 30, 1999 that Tri-State was not a qualified health care provider and Billy received notification from the PCF dated, September 8, 1999, that Barnes was not a qualified health care provider under the PCF.
The trial court took the matter under advisement and on October 21, 2002, rendered judgment, without reasons, sustaining the exception and dismissing Billy’s claim with prejudice. This appeal followed.

Discussion

Initially, we note that Billy’s claim is subject to the liberative prescription of one year from the day that injury or damage is sustained, as a delictual action pursuant to La. C.C. art. 3492, as physical therapists are not listed among those health care providers covered under the special periods for prescription set forth in La. R.S. 9:5628, regulating actions for medical malpractice. Under the provisions of La. C.C. art. 3492, if prescription is *995 evident on the face of the pleadings, the burden of proof shifts to the plaintiff to show that the action has not prescribed. See, Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502. Furthermore, when the plaintiffs petition shows on its face that the prescriptive period has run, and the plaintiff relies on a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. Holmes v. Lee, 35,021 (La.App.2d Cir.9/28/01), 795 So.2d 1232, 1235, citing, Burdeaux v. Cline, 626 So.2d 1205 (La.App. 2d Cir.1993), writ denied, 93-3132 (La.2/11/94), 634 So.2d 833.
| frBilly urges, in his third assignment of error, that by his filing a request for a Medical Review Panel within one year of Billy’s discovery date of his back re-injury, his claim is timely pursuant to La. R.S. 40:1299.47(A)(2)(a), infra.
In response to this assignment of error, Tri-State and Barnes argue that Billy’s filing of a claim with the Medical Review Panel on June 7, 1999 was not timely as Billy had actual notice of his back re-injury on February 13, 1998 during the FCE, while performing the 100 pound test required by Roadway. Tri-State and Barnes argue specifically that Billy’s complaints for over three months to Gleason and Tri-State regarding back pain following the FCE demonstrates Billy’s full awareness of his re-injury during the FCE. Lastly, Tri-State and Barnes argue that, notwithstanding Billy’s knowledge for the three months following the FCE, Billy’s June 2, 1998 comment to Barnes that “If I just hadn’t lifted that 100 pounds, I’d be doing ok” reflects Billy’s requisite knowledge to commence prescription and thus, Billy’s June 7, 1999 claim filed with the Division had prescribed.

The Reasonable Date of Discovery

Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort. Campo, supra at 510, citing, Percy v. State, Through E.A. Conway Memorial Hosp., 478 So.2d 570 (La.App. 2d Cir. 1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is 17whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription. Campo, supra at 510, 511, citing, Ledet v. Miller, 459 So.2d 202 (La.App. 3d Cir.1984), writ denied, 463 So.2d 603 (La.1985); Bayonne v. Hartford Insurance Co., 353 So.2d 1051 (La.App. 2d Cir.1977); Opelousas General Hospital v. Guillory, 429 So.2d 550 (La.App. 3d Cir.1983). Nevertheless, a plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the éxercise of reasonable diligence that his problem may have been caused by acts of malpractice. Campo, supra at 511, citing, Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment-related. Campo, supra at 511, citing, Griffin v. Kinberger, 507 So.2d 821 (La.1987). The ultimate issue is the reasonableness of the patient’s action or inaction, in light of his education, intelligence, and severity of the symptoms *996 and the nature of the defendant’s conduct. Campo, supra at 511, citing, Griffin, supra at 821.
In the instant proceeding, the trial court heard the peremptory exception of prescription filed by Tri-State and Barnes, at which time the|strial court heard the arguments of the parties and accepted into evidence upon stipulation of the parties, all notes and reports of Gleason and Tri-State relating to Billy’s medical care and physical therapy, respectively, as listed supra. Without written reasons, the trial court ruled that Billy’s claims had prescribed.[2]
On the record before us, we find, based on Gleason’s reports as discussed supra, and the jurisprudence set forth regarding reasonable notice in Griffin and Campo, supra, and by this court in Kavanaugh v. Long, 29,380 (La.App.2d Cir.8/20/97), 698 So.2d 730, writ denied, 97-2554 (La.5/15/98), 719 So.2d 67, reasonable notice of the instant tort occurred on July 1, 1999 when he learned the results of his repeat MRI. Billy’s mere knowledge that he experienced an exaggeration of his original back injury during the FCE and that an undesirable condition developed during his physical therapy treatment and prior to his knowledge of the repeat MRI, fails to equate to knowledge sufficient to place Billy on inquiry that a non-work related or non-treatment related subsequent tort may have arisen against TriState and Barnes sufficient to commence prescription.' See, Campo, supra at 512, 513. Moreover, before, during and after the FCE, Billy was under the strict medical care of Gleason, who engaged Tri-State for Billy’s conservative treatment. As reflected in Gleason’s reports of February, March, April, May, and June, 1998 discussed supra, even Gleason was unsure about the effects of the FCE 100 pound lift on Billy, by |8his noting that the FCE incident was a temporary setback and temporary exacerbation of Billy’s underlying work-related back injury to his L5-S1 disk. Not until physical therapy appeared to fail in June, 1998, did Gleason order a repeat MRI on July 1, 1999 which led Gleason to the knowledge that the FCE lift test caused additional degenerative damage and Billy’s bulging disk at L5-S1 was in a worse condition than shown by Billy’s last post-injury MRI of August 1997. There is no evidence in the record or produced by Tri-State or Barnes which suggests that Billy was ever “pain-free” from his underlying work-related back injury prior to the employer-required FCE on February 13, 1998. In fact, Gleason’s reports indicate that Billy’s maximum lift ability during work hardening with TriState never exceeded 40 pounds and that Billy’s pain level fluctuated during his physical therapy treatments pre and post FCE. In light of the weekly medical treatment regimen between Gleason and Billy, especially following the FCE, we do not find Billy acted unreasonably in failing to recognize that his degenerative disk condition at L5-S1 may have been in a worse condition than before the FCE. Not until the results of the repeat MRI were disclosed to . Gleason and Billy was Billy able to acquire the requisite knowledge beyond a mere apprehension that his ongoing back problems were significant and directly related to the FCE, as opposed to being related to his underlying back injury or the physical therapy thereof. To find otherwise would place an undue burden on Billy to have self-diagnosed the cause of his ongoing lower back pain and problems prior to Gleason ordering a repeat MRI on *997 July 1, 1998, which definitively connected Billy’s ongoing |inback pain to the FCE. See, Campo at 512, 513. Furthermore, we find that since Billy was under the ongoing medical care of Gleason and was relying on Gleason for the diagnosis of his continuing back problems, constructive knowledge of the cause of the instant injury by Billy was factually impossible, which falls under the fourth situation in which contra non valen-tem applies as set forth by this court in Stett v. Greve, 35,140 (La.App.2d Cir.2/27/02), 810 So.2d 1203. Thus, we find the reasonable date of discovery of the actionable event to be July 1, 1998, which commenced the tolling of prescription under La. C.C. art. 3492.

Billy’s Notice to the Division

Billy urges that the filing of the notice with the Division dated June 7,1999, which the record indicates was received as certified mail by the Division on June 9, 1999, was within one year of Billy’s July 1, 1998, notice of the repeat MRI results, which served to suspend the prescriptive period.
La. R.S. 40:1299.41, provides in relevant part:
A. As used in this part:
(1) “Health care provider” means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed by this state to provide health care or professional services as a ... physical therapist .
* * *
D. A health care provider who fails to qualify under this Part is not covered by the provisions of the Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient’s remedy will not be affected by the terms and provisions of this Part, except as | ^ hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this part when a claim has been filed against a health care provider for review under this Part.
* * *
(Our emphasis)
As was the case in Holmes, supra, when this court found that pharmacists were listed as health care providers under and subject to the Medical Malpractice Act, we likewise find that physical therapists are subject to the Medical Malpractice Act. Accordingly, Billy was required to follow the formalities of the Medical Malpractice Act before filing suit in the First Judicial District Court. See, Holmes, supra, at 1235, 1236, citing, LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226.
La. R.S. 40:1299.47 provides in relevant part:
A. (1) All malpractice claims against health care providers covered under this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a Medical Review Panel established as hereinafter provided for in this Section.
(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the Medical Review Panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this *998 Part, but who is not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part.
[[Image here]]
(Our emphasis)
|1gThe record reflects that the PCF notified Billy by letter dated July 30, 1999 that Tri-State was not covered under the PCF; there exists no proof in the record as to Billy’s receipt of this letter. Additionally, the record reflects that the PCF notified Billy by letter dated September 8, 1999, that Barnes was not covered under the PCF; again, there is no proof in the record as to Billy’s receipt of this letter either.
Billy filed suit in the district court on September 17, 1999, well less than 60 days after his receipt (or even the cover dates) of the Division letters stating that Tri-State and Barnes were not qualified health care providers. According to La. R.S. 40:1299.47(A)(2)(a), Billy’s prescriptive period for instituting suit against TriState was, at a minimum, October 30, 1999 and December 8, 1999 for bringing suit against Barnes. Accordingly, we find the trial court was manifestly in error and clearly wrong in sustaining Tri-State’s and Barnes’ exception of prescription and we remand to the trial court for further proceedings.
We also note that Billy has presented for our review, to-wit: whether or not the trial court erred by failing to find that contra non valentum applied to suspend prescription due to a “special relationship” existing between Billy and Tri-State. In light of our reversal of the trial court’s ruling and our remand for further proceedings by finding Billy’s claims were timely filed, we pretermit any consideration as to whether a “special relationship” existed between Billy and Tri-State.

11SConclusion

For the foregoing reasons, the judgment of the trial court is REVERSED at the cost of Tri-State and Barnes and REMANDED to the trial court for further proceedings.
REVERSED AND REMANDED

. We are omitting Sharon from discussion in this opinion; however, we note she is a party plaintiff and a co-appellant, yet she is not a subject of our review herein.

. We note that Billy and Sharon’s petition failed to contain any allegation of interruption or suspension based on their filing of a claim with the Division for a Medical Review Panel review pursuant to La. R.S. 40:1299.47(A)(2)(a).