11 DAVID S. GORBATY, Judge.
In this appeal, defendants urge that the trial judge erred in awarding damages to plaintiff and in denying their exception of prescription. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY

This medical malpractice case, which was filed on February 3,1997, arises out of the performance of a cholecystectomy by Dr. Gibson, a board-certified general surgeon, on Milezone Williams at United Medical Center on February 9, 1993. Two days later, Ms. Williams underwent a second remedial surgery to repair a complication in the nature of a Roux-en-y anasto-mosis. In September of 1994, Ms. Williams underwent a third procedure to repair a stricture that formed in the anas-tomosis performed by Dr. Gibson on February 11, 1993. Plaintiff filed suit, alleging that, during the performance of the initial laparoscopic cholecystectomy, Dr. Gibson erroneously identified the proximal duct of the stomach with the cystic duct, and mistakenly clipped and divided it, causing the need for a second procedure to repair the unintended damage.
Defendants filed an exception of prescription, arguing that Ms. Williams had signed a consent form on February 10, 1993 specifically noting that she was | ¡¿having surgery to “repair” and “fix” her bile duct, and that she knew something had gone wrong in the first surgery. However, she did not file a complaint with the Louisiana Patient’s Compensation Fund (“PCF”) until August 24, 1995, more than two and one-half years after the first repair surgery. The exception was denied, and the trial judge noted that “defendants ... are barred from raising the issue of prescription at trial.” In response to this ruling, defendants filed an appeal and a writ application. This court denied the writ, stating that defendants would have an adequate remedy on appeal and could proffer any information.
After a bench trial, matters relating to prescription were proffered. The trial judge initially entered judgment on October 31, 2002 in the amount of $770,000.00. Motions for new trial were filed by both parties, and as a result, the trial judge amended the original judgment, reducing the award to the Medical Malpractice Act $500,000.00 mandated cap. Defendants Louisiana Medical Mutual Insurance Company and Johnny L. Gibson, M.D. subsequently filed this appeal. The Louisiana PCF intervened for appeal purposes.
ASSIGNMENTS OF ERROR URGED BY LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY AND JOHNNY L. GIBSON, M.D.
1. The trial court erred in finding that defendants had breached the standard of care in general surgery.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court posited a two-part test for the reversal of a factfinder’s determinations:
*310 |31) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court.must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. at 1127 (quoting Arceneaux v. Domingue, 365 So.2d at 1333 (La.1978)),
This test dictates that the appellate court must do more than simply review the record for some evidence that supports or controverts the trial court’s finding. Id. The appellate court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the' court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973, 976 (La.1991), (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
Courts have recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be maniféstly erroneous or clearly wrong. Id.
In a medical malpractice action, the plaintiff has the burden of proving by a preponderance of the evidence the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians. practicing within its medical specialty; that the defendant either lacks this degree of knowledge or skill, or failed to use reasonable care and diligence along with his best judgment in the application of that skill and that as a proximate result of this lack of knowledge or skill, or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have occurred. La. R.S. 9:2794.
Other experts practicing within the defendant’s medical specialty determine the standard of care. At trial, both Dr. Philip Boudreaux and Dr. Samuel Esterk-yn testified about the standard of care in performing laparoscopic gallbladder sur *311 gery. Dr. Boudreaux testified that while performing the surgery, the doctor must identify the cystic duct, clip and cut it, and then remove the gallbladder. The surgeon must be certain about the identity of the cystic duct before he divides it. The surgeon must also be certain about its origin or certain of its termination by either identifying the junction of the gallbladder and the cystic duct or identifying the | ¿junction of the cystic duct and the common bile duct. If the surgeon is still having difficulty visualizing the cystic duct, then the standard of care is to perform a cholangio-gram (an x-ray using dye). If the doctor is still not sure after performing the cho-langiogram, then the procedure should be converted to an open procedure.
Dr. Esterkyn testified that during the surgery, if a surgeon is having doubts about the anatomy, it is a deviation from the standard of care not to do a cholangio-gram. If the anatomy still cannot be perfectly identified, the gallbladder should be removed via an open procedure. The doctor must be completely sure that he is addressing the correct duct before dividing it.
Dr. Esterkyn opined that Dr. Gibson deviated from the standard of care while performing the surgery on Ms. Williams. Based on his review of the medical records, he felt that Dr. Gibson was having difficulty visualizing the cystic duct during the surgery. He should have located the junction of the gallbladder and the cystic duct, the junction of the cystic and common bile duct, performed a cholangiogram and/or converted to an open procedure before he clipped and divided the wrong duct. He had an opportunity to avoid the injury, Dr. Esterkyn felt, but did not.
Defendants argue that injury to the common bile duct is an inherent risk of the laparoscopic gallbladder surgery. At trial, all of the experts agreed that an injury to the common bile duct is an inherent risk of the procedure. However, Dr. Boudreaux and Dr. Esterkyn made a distinction with this case. They testified that as a result of not following the proper safeguards for the procedure, Dr. Gibson identified, clipped, and operated on the wrong bile duct. As such, under these specific facts, Dr. Gibson deviated from the standard of care.
| ^Defendants further allege that Dr. Gibson did locate the junction of the gallbladder and the cystic duct. However, Dr. Gibson did not mention this fact in his previous deposition. Further, in deposition (although he later changed his testimony), Dr. Steven Jones testified that he and Dr. Gibson were both observing the operation on the same video screen, and Dr. Gibson did not locate the junction of the gallbladder and the cystic duct. The evidence does not support defendants’ assertion, nor does it support their contention that Dr. Gibson was not having difficulty visualizing the cystic duct during surgery.
Defendants also argue that a short cystic duct resulted in a more difficult operation. However, neither Dr. Gibson nor Dr. Jones mentioned a short duct in their prior depositions. This theory is also inconsistent with Dr. Gibson’s previous statement that there was nothing unusual or abnormal about the biliary ducts and that everything was anatomically correct.
We find that the trial judge was not manifestly erroneous in relying upon the testimony of Dr. Boudreaux and Dr. Est-erkyn, and discounting the possibly self-serving testimony of Dr. Gibson and Dr. Jones, his friend of twenty years. There was adequate evidence establishing that Dr. Gibson deviated from the standard of care when he performed the surgery on plaintiff.
*312 2. The amount of the award to plaintiff Milezone Williams was excessive. The evidence did not support the conclusion that any breach of the standard of care caused damages that would not have otherwise occurred; and
3. There was no evidence to support the amount of the award to Milezone Williams or her children.
These two assignments of error will be addressed together.
17The assessment of quantum or the appropriate amount of damages by a trial judge is a determination of fact that is entitled to great deference on review^ As such, the role of an appellate court in reviewing general damages is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, 2000-0492 (La.10/17/00), 774 So.2d 70. Moreover, before a court can disturb an award made by the factfinder, the record must clearly reveal that the trier of fact abused its discretion in making an award. Id.
As a result of Dr. Gibson deviating from the standard of care, Ms. Williams suffered many complications resulting in a subsequent reconstructive surgery; multiple hospital stays; nausea; severe vomiting; cirrhosis of the liver; a life-threatening infection; large scars from two corrective surgeries; and a host of other ailments and medical problems. Considering the life-threatening injuries suffered by Ms. Williams, we find that the damages awarded were reasonable, as were the damages awarded to her children. These two assignments of error lack merit.
4. The trial court erred in denying defendants’ exception of prescription. The evidence showed that plaintiffs did not timely file their complaint with the Louisiana Patient’s Compensation Fund. Ms. Williams did not file a complaint to institute a Medical Review Panel until August 24, 1995.
As a general rule, the party raising an exception bears the burden of proving its viability. But when a petition reveals on its face that prescription has run, the burden shifts to the plaintiff to show why the claim has not prescribed. Affordable Housing Developers, Inc. v. Kahn, 2000-0611, p. 4 (La.App. 4 Cir. 4/25/01), 785 So.2d 251, 254; Aetna Casualty and Surety Company v. Stewart Construction Company, Inc., 2000-1332, p. 5 (La.App. 5 Cir. 2/28/01), 780 So.2d. 1253, 1257.
Plaintiffs’ allegations of negligence are based upon medical malpractice. As a result, they are governed by the special prescriptive provision of La. R.S. 9:5628(A), which provides in pertinent part:
No action for damages for injury or death against any physician ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Under this statute, if the tolling of prescription began on the date of the alleged act of malpractice, which was no later than April 8, 1993, the date of Dr. Gibson’s last treatment of Ms. Williams, then this matter is prescribed. The only way Ms. Williams’ claim can survive this conclusion is if she did not discover Dr. Gibson’s alleged malpractice until sometime within *313 a year of the filing of her complaint with the PCF, thereby invoking the “discovery” exception set forth in La. R.S. 9:5628.
Application of the discovery rule turns on the nature and timing of the plaintiffs knowledge of the factual basis for the claim. This knowledge can be either actual or constructive and is judged on a reasonable person standard. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for injury. Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Percy v. State, Through E.A. Conway Memorial Hosp., 478 So.2d 570 (La.App. 2 Cir.1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts thatl9would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Campo v. Correa, M.D., 2001-2707 (La.6/21/02), 828 So.2d 502. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Id. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Ledet v. Miller, 459 So.2d 202 (La.App. 3 Cir.1984), writ denied, 463 So.2d 603 (La.1985); Bayonne v. Hartford Insurance Co., 353 So.2d 1051 (La.App. 2 Cir.1977); Opelousas General Hospital v. Guillory, 429 So.2d 550 (La.App. 3 Cir.1983). Nevertheless, a plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Campo, 828 So.2d at 511, citing Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. Campo, 828 So.2d at 511 citing Griffin v. Kinberger, 507 So.2d 821 (La.1987) (emphasis in original). The ultimate issue is the reasonableness of the patient’s action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct. Campo, 828 So.2d at 511 citing Griffin, 507 So.2d at 821 (emphasis in original).
In the instant case, Dr. Gibson admitted that after the surgery he did not tell Ms. Williams that he had done anything wrong. Furthermore, he did not inform her of any symptoms to be aware of should a postoperative stricture occur. |in Following the corrective surgery, she had no complications, and it was not until a year and a half later that Ms. Williams began suffering from hepatitis-like symptoms. She saw her family physician, who diagnosed her with hepatitis, and referred her to the ER. At the ER, she was again diagnosed with hepatitis, and after being admitted to the hospital, was also diagnosed with hepatitis by Dr. Angelica. Dr. Angelica testified that there was no indication from Ms. Williams that she thought her symptoms were in any way related to her prior gallbladder surgery. Ms. Williams also told Dr. McCaffery that she had no problem with the prior surgery.
Initially, all of the doctors who examined Ms. Williams believed she had hepatitis. It was not until an ultrasound was performed on August 28, 1994 that there was any indication that Ms. Williams may have been suffering from a post-operative stricture of the common duct. Many more tests were performed, and by August 30, *314 1994, the doctors finally concluded that Ms. Williams’ medical problems were caused by the prior gallbladder surgery.
Defendants argue that Ms. Williams knew she had a biliary duct injury following the February 9, 1993 surgery because she consented the next day to a “repair” of the injury. However, the consent form signed by Ms. Williams reveals no indication that Dr. Gibson negligently cut the common bile duct. It only stated that an “exploratory laparotomy with repair of biliary ductal system” would be performed. It did not indicate that the purpose of the surgery was to correct a negligent action. The form merely stated that the purpose of the procedure was to “find an area of leakage in the bile duct system and fix it.” It does not reveal that the reason for the leakage was that the wrong bile duct was cut.
|nThe overwhelming evidence and testimony supports Ms. Williams’ testimony that she was not aware that Dr. Gibson had operated on the wrong bile duct. The evidence also supports her contention that she did not become aware of the malpractice until she became acutely ill a year and a half after surgery. As such, we find that Ms. Williams filed suit within a year of discovering the alleged malpractice. This assignment of error lacks merit.
5. The trial court prejudged the case to the detriment of defendants. The trial judge prejudiced Dr. Gibson by concluding before the introduction of any defense evidence that the standard of care was breached.
Counsel for Dr. Gibson alleges that he overheard Judge King tell his law clerk before the conclusion of evidence that “this was a case of malpractice. Work it up this way.” Counsel avers that this affected the mindset of the law clerk, who was charged with taking notes and preparing the reasons for judgment. However, counsel made no objection related to this alleged incident during the trial. Facts referred to solely in arguments of counsel, in brief or otherwise, are not considered record evidence. Green v. Neese, 99-3224 (La.App. 4 Cir. 9/20/00), 769 So.2d 694. We find that there is no support for this assignment of error anywhere in the record and deem it to be without merit.

ASSIGNMENTS OF ERROR URGED BY LOUISIANA PCF

1. The trial judge erred in failing to maintain Dr. Gibson’s exception of prescription.
2. The trial judge erred in awarding excessive damages to the plaintiffs.
We find that these assignments of error are without merit, for the reasons discussed above.

Ji¡MOTION TO SUPPLEMENT

Plaintiffs have filed a Motion to Supplement the trial record, which has not been opposed. It is ordered that this Motion to Supplement be granted.

CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED; MOTION GRANTED