353 So.2d 1051 (1977)
Frances Jackson Bayonne, wife of, and Peter BAYONNE, Plaintiffs-Appellants,
v.
The HARTFORD INSURANCE COMPANY and Jack Grindle, M.D., Defendants-Appellees.
No. 13380.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1977.
Cotton, Jones & Dennis by David J. Dennis, New Orleans, for plaintiffs-appellants.
Cook, Clark, Egan, Yancey & King by Sidney E. Cook, Shreveport, for defendants-appellees.
Before BOLIN, PRICE and MARVIN, JJ.
*1052 PRICE, Judge.
In this medical malpractice action Mrs. Frances Jackson Bayonne has appealed the judgment sustaining a peremptory exception of prescription filed on behalf of defendants, Dr. Jack Grindle and his insurer, Hartford Insurance Company.
Plaintiff's suit arose out of the following facts: In early 1973, after experiencing unusual discomfort during menstruation, plaintiff visited the DeSoto Parish Health Unit to have an intrauterine device (commonly called an IUD) removed. The health unit was unsuccessful in its efforts and referred plaintiff to Dr. Grindle, a Mansfield surgeon. On March 2, 1973, Dr. Grindle attempted to remove the device, but, because it had become imbedded in the uterus, the plastic string attached to facilitate removal broke. He advised plaintiff that it would be necessary to perform a dilatation and curettage to accomplish removal. Prior to performing the surgical procedure, preoperative tests showed plaintiff was pregnant. Dr. Grindle then advised plaintiff the surgery could not be performed as it would terminate her pregnancy. Dr. Grindle furnished plaintiff pre-natal and obstetrical care, and on October 21, 1973, she gave birth to a healthy baby. At the request of plaintiff, Dr. Grindle performed a tubal ligation in connection with the delivery. Dr. Grindle removed plaintiff's sutures on October 29, 1973, which is the last time he treated plaintiff.
In April of 1974 plaintiff again began experiencing abdominal discomfort during menstrual periods, and in February 1975 she sought medical treatment from Dr. Irwin Rice of Shreveport. On February 26, 1975, X-rays made by Dr. Rice showed the IUD was still imbedded in body tissue near the uterus and surgery was performed removing the IUD and the fallopian tubes which had become inflamed.
Plaintiff filed suit on February 3, 1976, alleging Dr. Grindle was negligent in not removing the IUD and that he misinformed plaintiff that the device had passed from her body during delivery.
Since the alleged wrongful act of Dr. Grindle appears on the face of plaintiff's petition to have occurred more than one year before suit was filed, plaintiff's cause of action has prescribed unless: she could not have ascertained the tortious act by diligent inquiry; information was withheld from her by the defendant physician; or the defendant in some manner misled plaintiff. The burden of proving suspension of prescription due to lack of knowledge rests with plaintiff. Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (La.App. 1st Cir. 1970). Although prescription does not run against one who is ignorant of the fact that would entitle him to bring his suit, Cartwright v. Chrysler Corp., 255 La. 598, 232 So.2d 285 (1970), knowledge of the fact is presumed where plaintiff has sufficient information to incite her curiosity as to the cause of the injury, Quick v. Aetna Casualty, 347 So.2d 59 (La.App. 2d Cir. 1977).
Plaintiff contends the trial court improperly sustained defendants' plea of prescription because she has shown she did not know the IUD was still in her body and causing her discomfort until X-rays were made by Dr. Rice on February 16, 1976, less than one year before suit was filed.
We find the evidence to show plaintiff knew or should have known that there was a possibility of the device remaining in her body after delivery of the child. Dr. Grindle testified he did not inform plaintiff that the IUD was found by him in the afterbirth as contended by plaintiff. He had no recollection of discussing the device with her in any manner after delivery. He did testify that he has on occasions informed obstetrical patients using an IUD that it would not interfere with normal childbirth and that the device might pass with delivery. He further testified it would not have been possible for him to have removed the device during delivery because of the danger of perforation of the uterus.
From a review of notations made in his initial patient interview with plaintiff, Dr. Rise testified he was under the impression she was aware that she might not have passed the IUD at the time of birth of her baby. He therefore made X-rays to resolve any doubt of its presence.
The testimony of Dr. Grindle as corroborated by Dr. Rice constitutes a preponderance of the evidence to establish plaintiff knew of the possibility she retained the IUD after birth of the child.
Therefore, when she began having a reoccurrence of pain in her abdominal area during menstruation in April 1974, she had sufficient knowledge to have created a duty to make an adequate inquiry to determine *1053 if there was a causal relation between the suspected displaced IUD and her symptoms.
According to plaintiff's testimony the only action she took at that time was to call and discuss by telephone her symptoms with a Dr. Hobblet, an associate practicing with Dr. Grindle. Plaintiff testified she was told by Dr. Hobblet that the tubal ligation could be causing her discomfort and it should subside. From the evidence, it was not shown Dr. Hobblet was made aware of any prior history of difficulty with the IUD. Although her symptoms continued she did not seek further medical advice from Dr. Grindle's office or elsewhere until February 1975, when she saw Dr. Rice.
Considering all circumstances, plaintiff had ample knowledge of facts by the spring of 1974 to constitute constructive knowledge of the tortious event, resulting damage, and the causal relationship between the alleged negligence and her damage.
Therefore, this suit filed in February 1976, considerably more than a year later, is barred by prescription.
The judgment appealed is affirmed at appellant's cost.