478 So.2d 570 (1985)
Cliflene Goldsmith PERCY, Plaintiff-Appellant,
v.
STATE of Louisiana, Through E.A. CONWAY MEMORIAL HOSPITAL, Defendant-Appellee.
No. 17262-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
*571 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for defendant-appellee.
Before MARVIN, FRED W. JONES and LINDSAY, JJ.
MARVIN, Judge.
In this medical malpractice action, plaintiff Ms. Percy appeals a judgment sustaining the hospital's peremptory exception of prescription and dismissing her suit. The sole issue is when plaintiff "discovered" the natal injury to her son and commenced the running of the one-year prescriptive period of LRS 9:5628.[1]
We affirm, holding that the trial court did not err in finding that appellant had constructive, if not actual, knowledge of the existence and causal origin of an actionable wrong more than one year before her petition was filed.
*572 Appellant entered the hospital with labor pains on January 12, 1983. After x-rays and examinations, one of the hospital doctors told her she was having a "big fat baby" that would probably require a Caesarian delivery. She signed consent forms and was scheduled for surgery.
A Caesarian section was not necessary and plaintiff's child, Marcus, weighing over nine pounds, was normally delivered on January 16. The child's left arm and hand were paralyzed. Ms. Percy alleges the injury was caused by the trauma of the normal delivery which could have been avoided had the child been delivered by Caesarian section as originally thought necessary.
Ms. Percy's petition for damages, individually and as natural tutrix of her child, was filed July 23, 1984, more than 18 months after the birth.
Liability for medical malpractice, absent a special warranty or contract, is delictual. Sciacca v. Polizzi, 403 So.2d 728 (La.1981). The one-year prescriptive period of LRS 9:5628 ordinarily commences on the date of the alleged misconduct. When the petition on its face shows that prescription has accrued, however, the plaintiff must additionally allege (and prove) facts indicating that the injury and its causal relationship to the alleged misconduct were not apparent or discoverable until within the year before institution of suit. Under these circumstances, it is sometimes explained either that the cause of action does not accrue or that prescription, once commenced, is suspended. See Cartwright v. Chrysler Corporation, 232 So.2d 285 (La. 1970); Sumerall v. St. Paul Fire & Marine Ins., 366 So.2d 213 (La.App. 2d Cir. 1978); Speights v. Caldwell Memorial Hosp., 463 So.2d 881 (La.App. 2d Cir.1985).
Prescription commences and continues when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Constructive knowledge of the potential tort is found when a plaintiff has acquired sufficient information to incite curiosity, to excite attention, or to put on guard, a reasonably minded person that he or she has been wronged. Cartwright, supra; Bayonne v. Hartford Ins. Co., 353 So.2d 1051 (La.App. 2d Cir.1977).
Prescription does not commence when a plaintiff's ignorance of the injury is "not willful and does not result from [her] neglect" or when a plaintiff has a "mere apprehension" that something is wrong. See Stewart v. Highland Hospital, 412 So.2d 680 (La.App. 2d Cir.1982); Cordova v. Hartford Acc. & Indem. Co., 387 So.2d 574 (La.1980); Gunter v. Plauche, 439 So.2d 437 (La.1983); Bayonne, supra.
The record contains no hospital or other records describing or documenting the treatment received by mother and child. During her post natal recovery, doctors told plaintiff that the delivery was difficult and that Marcus had some paralysis in his left arm. Plaintiff said that one doctor told her that he "had to get right up here up above my stomach to push him out of there," and that, while still in the hospital, she "figured" the injury was caused by the doctor's failure to deliver the child by Caesarian as planned. Plaintiff also said that she "considered" legal action in January 1983 but that she relied on and believed assurances by hospital personnel that Marcus' arm would improve with time and therapy and she did not consult a lawyer until January 1984 after she decided, apparently on her own, that her son's arm "was not going to get any better."
Plaintiff strenuously argues that the "assurances" of the hospital personnel suspended prescription on her claim or cause of action until she realized the extent or permanence of the injury and consulted an attorney. At the hearing on the exception, she testified that if she had been told by hospital personnel shortly after the birth that her son's arm would be permanently paralyzed, she would have immediately gone to a lawyer.
The record supports the conclusion, however, that while plaintiff was still in the hospital in January 1983, she knew or believed that her child suffered injury (shoulder *573 dystocia) because of the apparent failure to deliver the child by Caesarian section. The record does not support the conclusion that the hospital doctors misled plaintiff or in any way concealed the nature, the extent, or the cause of the injury. Plaintiff acknowledged that the child now has some use of his left hand and arm, apparently in response to free therapy administered at "a clinic behind the hospital" and at LSU Medical Center in Shreveport. Further, plaintiff testified that no doctor, including those who later administered therapy, has ever told her the injury was permanent.
In any event, an injury need not be permanent to spawn a cause of action for damages. Thus, even if we assume arguendo that the injury was permanent and that this fact was concealed from plaintiff, the cause of action for malpractice during the birth, if any, became apparent to plaintiff immediately after she delivered the child.
Whether caused by the false assurances or representations of doctors or by neglect of a patient, ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription. A satisfactory showing of the former does not excuse or justify ignorance of those facts that would alert a reasonable person that he or she is the victim of a tort. See Couvillion v. St. Paul Fire and Marine Insurance Co., 328 So.2d 737 (La.App. 3d Cir.1976); Duhon v. Saloom, 323 So.2d 202 (La.App. 3d Cir.1975), writ refused; Stewart, supra.
Zeno v. Lincoln General Hospital, 376 So.2d 1284 (La.App. 2d Cir.1979), is factually distinguishable. Although Ms. Zeno suffered pain and discomfort after rectal surgery in 1969, this court held that prescription did not commence until a date within one year of suit, when another doctor told her that the 1969 operation caused the difficulty. Until then, she had no reason to believe a tort had been committed and no way to recognize the causal connection between the operation and her discomfort. Ms. Zeno never suspected her surgeon had done anything wrong because he told her she was experiencing normal tenderness from the surgery. The surgeon had declined to give Ms. Zeno a prognosis on later visits.
Here, the testimony strongly indicates that plaintiff "discovered" or learned of the alleged malpractice immediately after, and on the day, it occurred. LRS 9:5628. The trial court was not clearly wrong in finding that prescription had accrued before plaintiff filed the action. For these reasons, the judgment appealed, at appellant's cost, is AFFIRMED.
NOTES
[1] LRS 9:5628 reads in pertinent part:

A. No action for damages for injury ... against any physician, ... or hospital ... shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect;...
B. The provisions of this Section shall apply to all persons ... including minors and interdicts.