521 So.2d 758 (1988)
Joe WELCH and Rhonda Welch, Individually and on Behalf of their Minor Son, Edward Kent Welch, Plaintiffs-Appellants,
v.
ST. FRANCIS MEDICAL CENTER, INC., Defendant-Appellee.
Ralph B. ARMSTRONG, Exceptor-Appellee,
v.
Joe WELCH, Rhonda Welch and the Honorable Sherman A. Bernard, Commissioner of Insurance, Respondents-Appellants.
Nos. 19346-CA, 19347-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Rehearing Denied March 24, 1988.
Writs Denied May 13, 1988.
*759 Moore, Walters & Shoenfelt by Oscar L. Shoenfelt, III, Charles R. Moore, Edward J. Walters, Jr., Baton Rouge, for plaintiffs-appellants.
Hayes, Harkey, Smith, Cascio & Mullens by Haynes L. Harkey, Jr., Monroe, Deutsch, Kerrigan & Stiles by Christopher Tompkins, New Orleans, for defendant-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
In this medical malpractice action, Joe and Rhonda Welch on behalf of their minor son, Edward Kent Welch, appeal a judgment sustaining an exception of prescription. We reverse and remand.
On November 18, 1983, Rhonda Welch was admitted to the St. Francis Medical Center in labor where she delivered twins. The first baby was born without complications, but major complications surrounded the second birth. The second baby, Edward Kent Welch, who is now three years old, was delivered with the use of midforceps. After his first breath he ceased to breathe but the neonatal intensive care unit successfully resuscitated the baby. Kent Welch suffers from a number of severe medical problems. He must use a feeding tube, has chronic congestive problems and a regurgitant condition. He requires physical therapy and must take medication for seizures to which he is routinely subject. Tragically, when spoken to, he is only able to respond by smiling. Additionally, he is permanently blind.
In October of 1985, the Welches became "curious" concerning the circumstances surounding the birth of Kent and contacted an attorney in Baton Rouge who obtained copies of the medical records. Thereafter, a claim was filed with the Commissioner of Insurance on November 14, 1985 against the St. Francis Medical Center, Inc. and Dr. Ralph Armstrong, the physician who delivered the baby. As St. Francis was not a qualified health care provider at the time of the birth in question, suit was filed against St. Francis on December 20, 1985. St. Francis filed an exception of prescription as to these claims with the district court. In accordance with the medical malpractice act, Dr. Armstrong filed a petition in the district court to have an exception of prescription tried by the district court prior to review by the Medical Review Panel. These exceptions were consolidated for purposes of trial and were subsequently sustained.
In sustaining the exception, the trial court noted that the parents were "very aware" that their child was not normal.
*760 The court further noted that upon deciding to consult counsel in the matter in February of 1985, they had not just realized that "something had gone wrong." Further noting the education and understanding of the parents, the court stated:
Accordingly, this Court is convinced that any alleged malpractice was apparent and discoverable by petitioners at or shortly after the birth of their son, Kent, when they were made aware of the problems he experienced at birth. There is nothing in the record to convince this Court that it took petitioners some thirteen (13) months after Kent's birth for any malpractice claim to become apparent or discoverable by them.
The period of time during which an action for medical malpractice may be brought is set out in LSA-R.S. 9:5628, which reads as follows:
§ 5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
Plaintiffs' action is obviously past the one year period of prescription but within the three year period. As our Supreme Court explained in Griffin v. Kinberger, 507 So.2d 821 (La.1987), the purpose of the statute is to set "an outside limit of three years on the applicability of the doctrine of contra non valentem agere nulla currit praescriptio in medical malpractice cases." Griffin v. Kinberger, supra at 822. The Supreme Court had earlier explained in Chaney v. State, Through Department of Health, 432 So.2d 256 (La.1983), that LSA-R.S. 9:5628 legislatively incorporated the fourth category of the doctrine of contra non valentem as an exception to the prescription of one year in medical malpractice cases and at the same time limited the application of the doctrine to three years from the date of the "alleged act, omission or neglect."
This fourth category has been specifically defined as one in which
the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned.)"
Corsey v. State Department of Corrections, 375 So.2d 1319, 1322 (La.1979), (citations omitted).
This category has been further explained in the following terms in Griffin v. Kinberger, supra, as being one of reasonable ignorance.
Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment.
Griffin, supra, at 823-824 (footnote ommitted).
The appellants assert that the trial court incorrectly sustained the exception of prescription. They concede they were obviously aware of Kent's serious medical difficulties from birth, but urge that his problems *761 were not entirely apparent at birth and point out that additional difficulties have appeared as the child has grown older. More importantly, they strenuously argue that they were consistently advised by the defendants that Kent's birth was "one of those things" attributable to the normal difficulties inherent in the birth of twin babies.
The Welches both testified that the physicians attending Kent both at the time of the birth and after the birth, namely Drs. Gates, King and Armstrong, told them that the baby's oxygen supply had been cut off and that they did not know what had occurred. They were told that the birth of twins created a higher risk of problems and, therefore, complications were not uncommon. They stated, and the doctors' testimony corroborated, that they were told a likely cause of the birth defect was that Mrs. Welch's uterus contracted with such force that the baby's oxygen was cut off. While they conceded that they were informed that the child had a skull fracture, they were advised that this was a natural and unfortunate complication of this difficult delivery. Appellants emphasize that they were advised that the cause of their child's problem was a lack of oxygen, and they were told their child's difficulties were not caused by the fractured skull.
Thus, the plaintiffs testified that they were consistently told that the child received the best possible care and that his problems were an unfortunate but unavoidable complication which could occur during twin births as a result of oxygen deprivation.
Dr. Armstrong testified by deposition that he never had any definite indication of what caused the baby to have problems. He testified that after the birth he may have theorized as to what had happened, but he really did not have an explanation.
Also testifying were Kent's treating physicians after birth, Dr. Terry King, board certified pediatric cardiologist and pediatrician, and Dr. Gene Gates, a specialist in pediatrics and neonotology who helped resuscitate Kent after delivery. Dr. Gates theorized that the problems were caused by asphyxia in the uterus as the uterus contracted. Dr. Gates further testified that he advised the parents that these complications are often seen in twin births and stated he did not advise them of any wrongdoing on the part of Dr. Armstrong because he was not aware of any.
Dr. King testified that the problems were likely caused by the cut off of blood in the uterus at the time of contraction which resulted in a lack of oxygen. He likewise explained that twins were a high risk and would sometimes encounter complications. He never indicated any wrongdoing on the part of Dr. Armstrong or the hospital and believed that the Mrs. Welch and her children received optimal care.
Appellate decisions, Percy v. State, Through E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App. 2d Cir.1985), and Andrus v. Patton, 394 So.2d 714 (La. App. 3rd Cir.1981), have interpreted LSA-R.S. 9:5628 to require that when the claim is prescribed on the face of the petition that is to say when the claim is filed more than one year after the alleged act of omission or neglect, but within the absolute three year limitthe burden is on the plaintiff to establish that prescription has been interrupted or suspended. These determinations of plaintiff's burden are cast in doubt by Chaney v. State, Through Department of Health, supra.
In Chaney, the plaintiff sought redress for alleged acts of malpractice by one health care provider in June of 1977 and for related malpractice in the summer of 1978 from a second health care provider for failure to diagnose the condition which the original malpractice caused. These allegations were asserted by an action filed on May 11, 1981. Thus, the initial alleged malpractice was outside of the three years of LSA-R.S. 9:5628, while the second alleged incident was within the three year period but after the prescriptive period of one year. In sustaining the exception of prescription to the initial act and overruling it as to the second act, the court stated:
Although the suit was not filed within one year of the acts complained of, plaintiffs' petition alleges that Mrs. Chaney *762 had no knowledge of the cause of her abdominal pain until January 30, 1981. Accordingly, plaintiffs' suit was filed within one year from the date of discovery and within three years of the alleged act, omission or neglect. Hence, it has not prescribed on the face of the pleadings.

Chaney, supra, at 259-260 (emphasis supplied).
The Chaney holding seems to be that if the plaintiff alleges no knowledge of the cause of the difficulty and the suit is filed within the three year period, it is not prescribed on its face.
Thus, absent Chaney, we would have thought that plaintiffs had the burden of establishing a lack of a reasonable basis for suspecting malpractice. Griffin, supra; Percy, supra; Andrus, supra. However, it should be noted that Chaney does not discuss any facts that might have been known to the plaintiffs and was primarily directed to the issue of whether contra non valentem could obviate the three year bar of LSA-R.S. 9:5628.
They are thus within the implicit Chaney holding. Under their allegations of "lack of knowledge," their cause has not prescribed on its face, just as in Chaney. They alleged that they were misled and unaware of the cause of the severe and permanent neurological damage to Edward Kent Welch until November of 1985 when copies of the medical records were obtained.
The instant plaintiffs have specifically alleged that they "were incorrectly informed as to the cause of the permanent neurological damage to Edward Kent Welch by the defendant." Plaintiffs further alleged that they were specifically told that their son's loss of oxygen supply was a frequent complication during the birth of twins. They alleged that as a result of this information, they, being ordinary people and not physicians, had "no reason to believe or way to know that a tort had been committed by the defendants and no way to recognize any causal connection between their son's medical problems and negligence of the defendants...." It should be noted that the specific acts of negligence are asserted to be the mid-forceps delivery and the use of only one fetal heart monitor.
Thus, plaintiffs' contention here is that they were misled with respect to the significance of the skull fracture which was apparently caused by the mid-forceps delivery. It was not until they obtained the medical records that circumstances surrounding that delivery became known to them. Furthermore, they contend they were unaware of the fact that both twins were not consistently fetally monitored until the records were obtained.[*] In other words, their contention is that while they had obvious knowledge of the poor result, they were not aware of the significance of that result until the records were obtained. Importantly, they assert, the reason they were not so aware was because the medical advice they received was inaccurate and/or misleading.
Under these circumstances, there can be no doubt that the plaintiffs have alleged lack of knowledge and under the implicit Chaney holding, their cause has not prescribed on its face.
However, we do not resolve the question of whether Chaney has implicitly obviated the aforesaid appellate jurisprudence because we are of the view that plaintiffs have satisfied the burden established by that jurisprudence by showing a reasonable failure to discover an alleged act, omission or neglect. While they were obviously aware of their child's serious medical difficulties, they have shown that they were consistently advised that these problems were an unfortunate but normal complication of twin births which could not be prevented. Importantly, this record reveals that all of the physicians corroborated the testimony of the plaintiffs.
Moreover, the facts of this case bear a striking similarity to those of Poole v. Physician's and Surgeons Hospital, 516 So.2d 1185 (La.App. 2d Cir.1987). In Poole, the plaintiff likewise received consistent medical advice subsequent to the birth of her *763 child which in no way indicated that the child's complications resulted from inadequate treatment. The facts in Poole simply indicate that the child's condition was not fully determinable at a very early age and was tenatively diagnosed as "moderate to severe cerebral palsy." It was not until the birth of her second child, during which plaintiff received a fetal monitor and delivered by cesarean section that she suspected malpractice in the birth of her first child.
For the reasons aforesaid, we determine that the trial court erred in sustaining the exceptions of prescription. The judgment sustaining the exceptions of prescription is reversed, the exceptions are overruled, and the cause is remanded for further proceedings. All costs are assessed to appellees.
REVERSED and REMANDED.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., SEXTON, MARVIN, NORRIS and LINDSAY, JJ.
Rehearing denied.
NOTES
[*] Which twin was monitored how and when is uncertain as these records were destroyed.