861 So.2d 250 (2003)
Marilyn Haynes CADOGAN, as Curatrix of the Estate of James A. Haynes, and James A. Haynes
v.
Jan McCLANAHAN, M.D. and Louisiana Medical Mutual Insurance Company.
No. 2003-CA-0603.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 2003.
*252 H. Muldrow Etheredge, Covington, LA, for Plaintiff/Appellant.
Mary Fuchs Gaudin, Robert D. Ford, Mang, Batiza, Gaudin, Godofsky & Penzato, Metairie, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY, III, and Judge DENNIS R. BAGNERIS, SR.).
DENNIS R. BAGNERIS, SR., Judge.
Plaintiff, Marilyn Haynes Cadogan, as curatix of the estate of James Haynes appeals the dismissal of her medical malpractice action on exceptions of prescription asserted by the defendants Dr. Jan McClanahan and Louisiana Medical Mutual Insurance Company ("LMMICO") health care providers. We reverse and remand for the following reasons.

STATEMENT OF THE CASE
On March 23, 1991, James Haynes, a 66 year old gentleman was admitted to the Emergency Room of Humana Hospital in New Orleans, Louisiana. Mr. Haynes was presented to the emergency room with signs and symptoms of acute cholecystitis. He was treated and scheduled for gallbladder surgery.
On March 26, 1991, Mr. Haynes underwent a colonoscopy procedure because he had a positive occult stool. The colonoscopy revealed two benign polyps, which were removed.
On March 27, 1991, he underwent a retrograde cholangiogram endoscopically, which demonstrated two small stones in his common duct. Dr. Kedia was consulted and performed a sphicterotomy to remove the two small stones in Mr. Haynes' common duct.
On March 28, 1991, Mr. Haynes, underwent a cholectomy to remove his gallbladder. Mr. Haynes was found to have an acute cholecystitis with multiple stones. In the operative report, Dr. McClanahan dictated the following;
"The cystic duct was divided and litigated under laparoscopic visualization. However, we were unable to successfully complete the cholecytectomy in a closed fashion and a small laparotomy incision was made to remove the gallbladder and a complete dissection of the posterior gallbladder wall. With the patient open, the cystic duct stump was identified and visualized as being clipped with no evidence of bleeding or bile leakage." (emphasis ours).
On March 29, 1991, Mr. Haynes developed a temperature of 100. He complained of shortness of breath and mycardiomegaly. On April 1, 1991, Mr. Haynes, 72 hours postoperative, developed marked abdominal distention that was thought to be associated cardiovascular distress, which was initially interpreted to be cardiovascular in nature. However, it was later determined that the increased intra-abdominal swelling was the evidence of sepsis as indicated by his high temperature and increasing white count. Mr. Haynes developed profound pulmonary failure, which required him to be placed on *253 ventilator support. He became hypovolemic and required fluid resuscitation. Also, he was found to be hypotensive, which indicated his medical condition was not cardiac related.
On April 1, 1991, Dr. McClanahan discussed Mr. Haynes' condition with his family and the need for him to be returned to surgery to determine if there was a correctable problem that was the cause of his septic shock. The family was also informed of the high probability that Mr. Haynes may not survive the surgery. On the same day, Mr. Haynes was returned to surgery in order to perform the abdominal exploration. Dr. McClanahan obtained a consent form that was signed by Mrs. Cadogan for the surgery. Mr. Haynes' blood pressure was 55 systolic and he had no urine output but was taken to surgery.
In surgery, Mr. Haynes was found to have diffuse bilateral peritonitis with the source being a small leakage proximal to the clamps on the cystic duct stump. Cultures on the cystic duct grew out E. Coli.
Mr. Haynes then experienced multiple organ failure, which required him to stay in the ICU/CCU for 21 days. He had to be maintained on ventilator support. Further, he developed acute tubular necrosis with renal failure. He also developed hypoxic encephalopathy.
Dr. McClanahan consulted multiple physicians in order to manage Mr. Haynes' multiple medical problems and needs. Dr.'s Hill and Coco treated and managed Mr. Haynes infectious disease with antibiotics. Dr. Colcolough assisted with his Cardiology related needs during this period of time. Dr. Holt assisted with Mr. Haynes' acute tubular necrosis. Dr. Larimer managed the respirator and he treated his pulmonary failure.
Dr. Trahant was consulted because Mr. Haynes was not showing evidence of awareness or appropriate response. Dr. Trahant obtained an EEG and opined that Mr. Haynes had sustained permanent neurological damage. Dr. McClanahan disagreed with Dr. Trahant's opinion that the neurological damage was permanent and irreversible. Dr. McClanahan was hopeful that Mr. Haynes would respond to rehab therapy.
On April 7, 1991, Mr. Haynes was returned to surgery for another abdominal exploration for generalized peritonitis, wound closure and for the placement of a gastrostomy tube for his nutritional support feedings.
On April 24, 1991, Mr. Haynes was weaned off of the ventilator support that was surgically replaced with tracheotomy tube. Drs. Ellis and Voche performed the tracheotomy. Also, Mr. Haynes was provided nutritional support through a gastrointestinal feeding tube (G-Tube). Mr. Haynes remained in ICU/CCU during this time.
Dr. McClanahan noted in the progress note that Mr. Haynes' condition was guarded but showed signs of improving clinical presentation. Later, Mr. Haynes was transferred to F. Edward Hebert Hospital in New Orleans, Louisiana for extensive rehabilitation and continued treatment for the hypoxic encephalopathy, which he had developed. On July 4, 1991, he went home to live with Cadogan.

DISCUSSSION
The initial issue is whether the medical malpractice claim has prescribed on its face because it was filed after one year from the date of discovery, but not before the three year prescriptive period pursuant to La. R.S. 9:5628(A). The second issue is whether the alleged malpractice victim was reasonable in not discovering within a year that his medical condition was related to his surgical treatment.
*254 La. R.S. 9:5628(A) provides in pertinent part:
No action for damages for injury or death ... arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; provided, however, that ... in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
Commenting on this revised statute in Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 723 (La.1986), the Supreme Court stated:
La. R.S. 9:5628 sets forth more than one time period. Initially, it coincides with La.C.C. art. 3492's basic one year prescriptive period for delictual actions, coupled with the "discovery" exception of our jurisprudential doctrine of contra non valentem ("within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect"). A separate and independent feature, or provision, of La. R.S. 9:5628 is contained in the following clause:
.... provided, however, that even as to claims filed within one year from the date of discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
... [W]e conclude that La.Rev.Stat. § 9:5628 is in both of its features noted above a prescription statute, with only the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect.
In summation, the Supreme Court effectively held that La. R.S. 9:5628 not only corresponds with the basic one-year prescriptive period for delictual actions provided in La. C.C. art. 3492, it embodies the discovery rule delineated as the fourth category of contra non valentem that is with the "single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect." Hebert, 486 So.2d at 724; see also Fontenot v. ABC Ins. Co., 95-1707 p. 5 (La.6/7/96), 674 So.2d 960, 963; White v. West Carroll Hospital, Inc., 613 So.2d 150, 155 (La.1992) (holding that La. R.S. 9:5628 embodies contra non valentem in medical malpractice suits).
La. R.S. 9:5628 shows that the statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three year limitation from the date of the alleged act, omission or neglect to bring such claims. Hebert thoroughly examined the legislative history of La. R.S. 9:5628 and determined that it was clearly a "prescription statute with a qualification, that is, the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission or neglect." Hebert, supra, 486 So.2d at 724-25. Thus, a petition should not be found prescribed on its face if it is brought within one year from the date of discovery the facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient.
In the instant case, the trial court found in favor of the defendant, Dr. Jan McClanahan and the Louisiana Medical Mutual Insurance Company and against the plaintiff, Marilyn Haynes Cadogan. The trial court opined that Mrs. Cadogan had sufficient *255 notice to start the running of prescription. Further, the trial court noted that Mrs. Cadogan's failure to file suit prior to sixteen months subsequent to surgery was unreasonable.
We find that the trial court erred as a matter of law when it found that the Cadogan's petition was prescribed on its face. Although the Cadogan's petition was filed more than one year after the date of the last act of Dr. McClanahan's upon which negligence was alleged, the plaintiff's pleadings made a prima facie showing that it was filed "within one year from the date of discovery" and "within a period of three years from the date of the alleged act, omission or neglect." La. R.S. 9:5628(A).
Accordingly, the trial court erred as a matter of law in shifting the burden to Cadogan to prove prescription was interrupted. Therefore, we find that the burden of proof at the trial of the peremptory exception rested upon Dr. McClanahan, and LMMICO the exceptors.

DE NOVA REVIEW
We find that the trial court erred as a matter of law when it found that the Cadogan's petition was prescribed on its face. Therefore, we will conduct a de nova review because of the error of law and determine whether the date of discovery was reasonable.
An appellate court may review a question of law to decide whether the trial court's decision is legally correct or incorrect. Jim Walter Homes, Inc. v. Jessen, 98-1685 p. 5 (La.App. 3 Cir.3/31/99), 732 So.2d 699, 702.
If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, its decision is not entitled to deference. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071,1072 (La.1983). When the court finds that a reversible error of law was made in the lower court, we must redetermine the facts, de novo, from the entire record and render a judgment on the merits. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993); Scales v. Rapides Regional Medical Center, XXXX-XXXX (La.App. 3 Cir. 2/6/02), 815 So.2d 925.
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should make its own independent de novo review and assessment of the record. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 746-47; Gonzales v. Xerox Corp., 320 So.2d 163, 166 (La.1975). More specifically, when reviewing courts have found that the lower courts of this state utilized an improper burden of proof, the jurisprudence has recognized that such an error may have interdicted the fact-finding process and calls for a de novo review of the evidence. Ferrell, 650 So.2d at 746-47; Duncan v. Safeway Ins. Co. of La., 35,240 p. 3 (La.App. 2 Cir.10/31/01), 799 So.2d 1161, 1163; Valley v. Specialty Restaurant Corp., 98-0438 p. 6 (La.App. 4 Cir. 1/19/99), 726 So.2d 1028, 1032; Campo v. Correa, 2001-2707 p. 10 (La.6/21/02), 828 So.2d 502, 510.

REASONABLENESS OF DATE OF DISCOVERY
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Percy v. State, Through E.A. Conway Memorial Hosp., 478 So.2d 570, 572 (La.App. 2 Cir.1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit *256 as long as there is constructive knowledge of the same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of the prescriptive period. Ledet v. Miller, 459 So.2d 202, 204 (La.App. 3 Cir.1984), writ denied, 463 So.2d 603 (La.1985); Bayonne v. Hartford Insurance Co., 353 So.2d 1051, 1052 (La.App. 2 Cir.1977); Opelousas General Hospital v. Guillory, 429 So.2d 550, 552 (La.App. 3 Cir.1983). Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Gunter v. Plauche, 439 So.2d 437, 439 (La. 1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. Griffin v. Kinberger, 507 So.2d 821 (La.1987). The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. Id.
Our review of the record in the instant case of Cadogan's original and supplemental petitions shows that the allegations against Dr. McClanahan was based on his performance of Mr. Haynes' gallbladder surgery, the failure to recognize bile leakage prior to closure of Mr. Haynes' abdomen, the failure to recognize the signs and symptoms of peritonitis, the failure to act timely to return Mr. Haynes to surgery and correct the leakage, the failure to provide post-operative care and treatment, the failure to consult other medical specialists prior to Mr. Haynes' medical condition reaching a severe physiological state, the failure to disclose that their was a bile leakage which caused Mr. Haynes to suffer peritonitis and for him to go into septic shock, experience multiple systems failure and to become blind in one of his eyes due to a lack of oxygen and blood pressure problems during the received surgical treatments. Further, Cadogan contends that they did not discover that Mr. Haynes' blindness and the cause of his medical condition were related to the surgical treatment performed by Dr. McClanahan.
Dr. McClanahan entered a general denial in his answer. He further, argues that he received a favorable finding from the Medical Review Panel that found he complied with the standard of care and was free of negligence, malpractice and his treatment of Mr. Haynes. Dr. McClanahan made two alternative arguments in his answer; his first argument was that a third party who was not under his control caused the harm Mr. Haynes suffered. Secondly, he contends that the medical condition, complication and /or damages suffered by Mr. Haynes were the result of natural causes and or/illness and/or other factors unrelated to the treatment and care rendered by him.
Cadogan in her petition contends that she was unaware of the extensive medical problems suffered by Mr. Haynes immediately after his gallbladder surgery on March 28, 1991. Cadogan contends that she did not recognize a direct relationship between her father's March 28, 1991 surgery and his postoperative condition until another physician who informed them that it was related to his previous gallbladder surgery.
*257 Dr. McClanahan argues that the burden of proof was on Cadogan to provide evidence at the time of the hearing on prescription that Dr. McClanahan concealed information or mislead them in some way so as to effectually prevent them from availing themselves of a cause of action. We disagree. It was incumbent upon Dr. McClanahan and his insurer to show that the alleged misconduct was either apparent or discoverable before August 1992 and Cadogan failed to file suit within one year of that knowledge. However, Dr. McClanahan argues that Cadogan had knowledge of a potential claim against him before August 1992. Also, Cadogan at least had sufficient information to make her inquiry as to whether Mr. Haynes had been wronged. Dr. McClanahan contends that the critical nature of Mr. Haynes' medical condition and need for another surgery was clearly evident to Cadogan. We disagree.
The jurisprudence is well established that the mere fact there is an injury during or following medical care or treatment is not an indication that the physician provided substandard care. See La.R.S. 9:2794(C). In Smith v. Lincoln General Hospital, 27,133 p. 11 (La.App. 2 Cir. 6/21/95), 658 So.2d 256, writ denied, 95-1808 (La.10/27/95), 662 So.2d 3., the Second Circuit Court of Appeal held that the mere fact an injury occurred does not raise the presumption that the physician was negligent. Moreover, the simple knowledge that an undesirable condition has developed at sometime after medical treatment does not equate to knowledge of everything to which inquiry might lead. Kavanaugh v. Long 29,380 (La.App. 2 Cir. 8/20/97), 698 So.2d 730, writ denied, 97-2554 (La.5/15/98), 719 So.2d 67.
In the instant case, the record indicates Dr. McClanahan informed Mr. Haynes family of their Father's medical condition after, the gallbladder surgery, but there is no indication that the family was told specifically that their father had diffuse bilateral peritonitis with the source being a small leakage proximal to the clamps on the cystic duct stump that had occurred during the gallbladder surgery. Also, the consent form signed by Cadogan, outlined the potential risks associated with surgery, such as Death, Brain Damage, Quadriplegic, Paraplegic, Loss of Organ, Loss of Arm or Leg Loss of Function of organ, Loss of Function of an Arm or Leg and Disfiguring Scars. Further, it is noted in the record that Dr. McClanahan discussed Mr. Haynes prognosis with his family after the second surgery performed on their Father. We do not find that Cadogan was unreasonable in viewing that Mr. Haynes' medical condition was one of the common risks of surgery, and that these conditions alone were sufficient to raise any suspicion that Dr. McClanahan had committed medical malpractice.
Dr. McClanahan, also stressed that Cadogan should have known something was amiss because of the drastic decline of Mr. Haynes' medical condition and his dim prognosis. The jurisprudence is well established that unsuccessful surgery is not per se an indication of medical malpractice. Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). Therefore, we do not find it unreasonable for Cadogan to have failed to recognize that her father's medical condition may have been related to the gallbladder surgery performed by Dr. McClanahan. To find otherwise would place an undue burden on Cadogan and her siblings to have diagnosed the cause of Mr. Haynes injury. Further, no members of Mr. Haynes family were physicians, and only Mrs. Randall, Cadogan's sister who worked as a nurse's aide, had any remote background in the medical field.
*258 Dr. McClanahan suggests that nothing prevented the family from discussing their Father's condition with him or any of the physicians that were consulted to assist his treatment. This argument is of no moment. Accordingly, we find that Dr. McClanahan and his insurer failed to prove that Cadogan's medical malpractice claims against them were prescribed.

CONCLUSION
Accordingly, we find that the trial court erred as a matter of law in holding that Cadogan's medical malpractice action was prescribed on its face, thereby shifting the burden of proof to the plaintiffs at the hearing on the defendants' peremptory exception of prescription. After this Court conducted a de nova review of the record, we further find that Dr. McClanahan and his insurer failed to prove that the Cadogan petition had prescribed. The date of discovery was not reasonably know able to Cadogan until August 1992 when she and her siblings were informed of Mr. Haynes' blindness and that this was possibly related to his gallbladder surgery performed by Dr. McClanahan.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, vacated and set aside. This matter is remanded to the trial court for further proceeding consistent with this opinion.
REVERSED AND REMANDED.