TERRI F. LOVE, Judge.
11 This appeal arises from the medical malpractice suit brought by the decedent’s surviving spouse and children. The decedent passed away from acute renal failure after becoming dehydrated while in a nursing home’s care. After the lawsuit was filed, the nursing home filed an exception of prescription alleging that over one year had passed from the date of the alleged malpractice and the filing of the lawsuit. The trial court granted the exception finding that the surviving spouse was aware of the decedent’s injuries and had sufficient information to excite her curiosity when she removed her husband from the nursing home. The trial court also found that the surviving spouse and children consulted with an attorney regarding the nursing home’s malpractice within one year of the last date of the malpractice.
We find that the doctrine of contra non valentum applied to prevent the commencement of prescription. Further, we find that it was reasonable for the surviving spouse and children not to suspect that the nursing home committed malpractice because the acts of the nursing home were not the cause of the decedent’s hospice care. Additionally, we find that the record lacks sufficient evidence to prove that the surviving spouse and children contacted an attorney |2regarding the nursing home’s actions within a year from the decedent’s last day at the nursing home. Accordingly, we find that the lawsuit was filed within one year “from the date of discovery of the alleged act, omission, or neglect.” Therefore, we reverse and remand for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 29, 2009, Delvin Hume was admitted to Prestige Care, L.L.C. d/b/a Ferncrest Manor Living Center (“Fern-crest”) for a thirty-day respite stay while his wife, Kathryn Hume, underwent and recuperated from a corneal transplant. Mr. Hume suffered from numerous health afflictions, but was stable when he entered Ferncrest. His health conditions included diabetes mellitus, hyponatremia, cardiovascular heart disease, bipolar disorder, dementia without behavior disturbance, anorexia, iron deficiency anemia, a prosthetic right leg resulting from an above-the-knee amputation in 1999 due to peripheral vascular disease, a prosthetic right eye, a missing right fifth finger, a missing left fifth toe, and post-concussion syndrome following a fall in 2008. Mrs. Hume was Mr. Hume’s primary caregiver.
“On May 2, 2009, Mrs. Hume found her husband lying on the floor of his room at Ferncrest after having apparently fallen out of his bed at an earlier undetermined time.” “On May 3, 2009, a Ferncrest staff nurse refused to give Mr. Hume his prescribed diabetic medication, Glucophage, on the basis (later shown to be in error) that Mr. Hume had not been prescribed that medication.” Later that day, Mrs. Hume removed Mr. Hume from Ferncrest. Mrs. Hume took her husband home under the guise of a pass, but had no intentions of returning Mr. Hume to Ferncrest. “Her primary reason for taking this action was that Mr. Hume was complaining about being in the nursing home, but she was also concerned about 13his appearance, his fall from the bed and the mix-up in administering his diabetic medication.” Later that day, Mr. Hume was “doing poorly,” so his personal physician instructed Mrs. Hume to bring him to the emergency room. While in the hospital, Mr. Hume was diagnosed with an intestinal blockage and nodule in one of his lungs.
Mr. Hume was placed into home hospice care after leaving the hospital on May 12, 2009, because Mr. and Mrs. Hume, and *237 medical professionals decided Mr. Hume would not survive the treatment required for the nodule in his lung. The diagnosis at the beginning of Mr. Hume’s hospice care was stomach cancer. Mr. Hume passed away surrounded by his loved ones at home on May 24, 2009. Mr. Hume’s death certificate reflects that his cause of death was acute renal failure and cardiovascular heart disease.
After Mr. Hume’s death, the family’s attorneys were conducting discovery in conjunction with a lawsuit regarding a previous slip and fall by Mr. Hume. They discovered that Mr. Hume’s Ferncrest records indicated that Mr. Hume had a lack of urinary output during his respite care. The records also revealed that Mr. Hume was severely dehydrated when he was admitted to the hospital on May 3, 2009.
After discovering this information, Mrs. Hume and Mr. Hume’s children[1] (collectively the “Humes”) requested that a medical review panel (“MRP”) be convened to review the actions of Ferncrest and Dr. Riaz U1 Haque. The MRP found that Dr. Haque met the applicable standard of care in his treatment of Mr. Hume. However, the MRP found that Ferncrest did not meet the applicable ^standard of care. Specifically, the MRP found that it was “a deviation from the standard of care to not timely notify a physician of a patient’s change in condition. The records do not indicate that the nursing staff recognized the patient’s lack of urinary output for three days.” The MRP also stated that “[t]he standard of care requires the home to notify the physician of the lack of urinary output for further orders and/or treatment.”
On October 24, 2012, the Humes filed a Petition for Damages against Ferncrest, Ferncrest’s insurer, Dr. Haque, and the Louisiana Medical Mutual Insurance Company (“LAMMICO”) as Dr. Haque’s insurer. The Humes sought damages corresponding with the wrongful death of Mr. Hume, a survival action, LeJeune damages, loss of consortium, medical malpractice, and violations of resident’s bill of rights.
Ferncrest filed a peremptory exception of prescription alleging that more than one year elapsed between the alleged medical malpractice and the request for a MRP on May 19, 2010. Subsequently, the Humes filed their First and Second Supplemental and Amended Petitions. The trial court granted Ferncrest’s exception of prescription, finding that Mrs. Hume had.enough knowledge of the alleged medical malpractice when she removed Mr. Hume from Ferncrest on May 3, 2009, to commence the running of the one-year prescriptive period. The Humes’ devolutive appeal followed.
The Humes contend that the trial court erred by refusing to apply the doctrine of contra non valentum, by granting the exception of prescription and stating that the commencement date was May 3, 2009, and by finding that the Humes sought legal advice about the alleged medical malpractice within a year of May 3, 2009.

\ STANDARD OF REVIEW

“In reviewing a peremptory exception of prescription, an appellate court should not disturb the findings of the trial court unless it is clearly wrong.” Brumfield v. McElwee, 07-0548, pp. 3-4 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 238. “In the absence of manifest error, the trial court should not be reversed, since the issue to be decided by the appellate court is not whether the trial court was right or *238 wrong, but whether the fact finder’s conclusion was reasonable.” Id., 070548, p. 4, 976 So.2d at 238.

PRESCRIPTION

Prescription is a peremptory exception. La. C.C.P. art. 927(A)(1). “The function of the peremptory exception is to have the plaintiffs action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action.” La. C.C.P. art. 923. “The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision and may be filed with the decli-natory exception or with the dilatory exception, or both.” La. C.C.P. art. 928(B). “On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.” La. C.C.P. art. 931. “When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.” La. C.C.P. art. 934.
The exceptor bears the burden of proof on the exception. Dewailly v. Lexington Ins. Co., 09-0020, p. 2 (La.App. 4 Cir. 9/16/09), 23 So.3d 368, 369. However, “when the plaintiffs petition has clearly prescribed on its face, ... the |fiburden shifts to the plaintiff to prove that the claim has not prescribed.” Denoux v. Vessel Mgmt. Servs., Inc., 07-2143, p. 5 (La.5/21/08), 983 So.2d 84, 88. “In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true.” Id., 07-2143, p. 6, 983 So.2d at 88.

Contra Non Valentum,

The Humes contend that the trial court erred by refusing to apply the doctrine of contra non valentum.
 “Contra non valentum is a Louisiana jurisprudential doctrine under which prescription may be suspended.” Carter v. Haygood, 04-0646, p. 11 (La.1/19/05), 892 So.2d 1261, 1268. The doctrine of contra non valentum applies “[w]here the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.” Corsey v. State, Through Dep’t of Corr., 375 So.2d 1319, 1322 (La.1979).
“An action for medical malpractice sounds in negligence.” Carter, 04-0646, p. 8, 892 So.2d at 1266. La. R.S. 9:5628(A) provides that:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect....
“The one-year prescriptive period for a medical malpractice action will not begin to run at the earliest possible indication that a patient may have suffered some wrong.” Guitreau v. Kucharchuk, 99-2570, p. 6 (La.5/16/00), 763 So.2d 575, 579-80. “Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against every person who might have caused his damage.” Id., 99-2570, p. *239 6, 763 So.2d at 580. “Mere notice of a ■wrongful act will not suffice to commence the running of the prescriptive period.” Id. “[I]n order for the prescriptive period to commence, the plaintiff must be able to state a cause of action — both a wrongful act and resultant damages.” Id. “Ignorance of the probable extent of injuries materially differs from ignorance of actionable harm, which delays commencement of prescription.” Id., 99-2570, pp. 6-7, 763 So.2d at 580. “The running of the prescriptive period is triggered when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.” In re Med. Review Panel of Lafayette, 03-457, pp. 5-6 (La.App. 5 Cir. 10/15/03), 860 So.2d 86, 89.
“Constructive knowledge has been defined by our courts as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry.” Oracle Oil, LLC v. EPI Consultants, Div. of Cudd Pressure Control, Inc., 11-0151, p. 6 (La.App. 1 Cir. 9/14/11), 77 So.3d 64, 69. “Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription?’ Id. “In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court’s ultimate consideration is the reasonableness of the injured party’s action or inaction in light of the surrounding circumstances.” Id., 11-0151, p. 7, 77 So.3d at 69. “?The ultimate issue is the reasonableness of the patient’s action or inaction, in light of his education, intelligence, the severity |sof the symptoms, and the nature of the defendant’s conduct.’” Lafayette, 03-457, p. 6, 860 So.2d at 89, quoting Campo v. Correa, 01-2707, p. 12 (La.6/21/02), 828 So.2d 502, 511.
“The filing of a panel request after the accrual of a year is ineffective to suspend prescription from the date of the act because prescription cannot be suspended after it has run.” Geiger v. State ex rel. Dep’t of Health & Hosp., 012206, p. 5 (La.4/12/02), 815 So.2d 80, 83. The Louisiana Supreme Court held that:
a petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware-of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient.
Campo, 01-2707, p. 9, 828 So.2d at 509. If the plaintiffs petition “made a prima facie showing that” the request for a MRP “was filed ‘within one year from the date of discovery’ and ‘within a period of three years from the date of the alleged act, omission or neglect,’ ” then the trial court “erred as a matter of law in shifting the burden to the” plaintiff “to prove prescription was interrupted.” Id., 01-2707, p. 10, 828 So.2d at 509, quoting La. R.S. 9:5628(A).
Mrs. Hume received and read Mr. Hume’s death certificate listing acute renal failure as the cause of death during June 5-8, 2009. However, Mrs. Hume asserts that she did not know about Mr. Hume suffering from dehydration until she read the hospital discharge summary on July 2, 2009. Further, Mrs. Hume contends that she was unaware of “any acts and/or omissions by Ferncrest causing dehydration until the receipt and review of the Fern-crest records by her counsel on May 17, 2010,” while the attorneys were reviewing information relating to the slip |fland fall lawsuit. The Humes’ request 'for a MRP was mailed on May 19, 2010, and received *240 on May 21, 2010. Therefore, the Humes aver that prescription had not run because they were not aware of' Ferncrest’s acts of malpractice until the medical records were reviewed.
The Humes’ petition was filed more than one year after Mr. Hume left Ferncrest. The petition does not contain any information regarding when Mrs. Hume suspected that Ferncrest committed malpractice. However, the First Supplemental and Amended Petition, filed prior to the hearing on the exception, as well as the oppositions to the exception, alleged that none of the Humes were informed by the hospital or hospice service that Mr. Hume was “diagnosed with acute renal failure, likely secondary to dehydration.” The Humes also alleged that they did not know the “details relative to the alleged substandard care and treatment of Mr. Hume at and by Ferncrest Manor and by Dr. Haque ... until well after ” Mr. Hume’s death on May 24, 2009. David Louis Hume reportedly asked the hospice nurse what caused his father’s death the day he died. The hospice nurse informed him that his father was admitted to hospice with a diagnosis of stomach cancer, but that his diagnosis was changed to failure to thrive. Mrs. Hume received Mr. Hume’s death certificate in June 2009. Lastly, Mrs. Hume asserted that she was unaware of Ferncrest’s acts of medical malpractice until May 17, 2010, when her attorneys received and reviewed Ferncrest’s records. The affidavits submitted by the Humes all reflect this time-, line and that they had no knowledge that anything that happened at Ferncrest could have caused Mr. Hume’s death.
Given the above facts pled in the First Supplemental and Amended Petition and applying the doctrine of contra non valen-tum, the Humes presented a prima \ wfacie showing that it was filed within one year “from the date of discovery of the alleged act, omission, or neglect.” Therefore, the matter was not prescribed on its face. Thus, the burden of proof remained with Ferncrest as the exceptor. We must determine whether the trial court committed manifest error in its factual findings regarding the alleged date of discovery.

Reasonableness of Date of Discovery

The Humes assert that the trial court erred by finding that prescription commenced on May 3, 2009, and that the Humes sought legal advice about Fern-crest’s medical malpractice within a year of May 3, 2009.
The Louisiana Supreme Court stated that:
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Percy v. State, E.A Conway Memorial Hosp., 478 So.2d 570 (La.App. 2 Cir.1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Ledet v. Miller, 459 So.2d 202 (La.App. 3 Cir.1984), writ denied, 463 So.2d 603 (La.1985); Bayonne v. Hartford Insurance Co., 353 So.2d 1051 (La.App. 2 Cir.1977); Opel-ousas General Hospital v. Guillory, 429 So.2d 550 (La.App. 3 Cir.1983). Nevertheless, a plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of pre *241 scription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the |n condition might be treatment related. Griffin v. Kinberger, 507 So.2d 821 (La.1987). The ultimate issue is the reasonableness of the patient’s action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct. See Griffin, 507 So.2d at 821.
Campo, 01-2707, pp. 11-12, 828 So.2d at 510-11.
The trial court concluded that the Humes “were aware of Mr. Hume’s injuries and had sufficient information to excite their curiosity, attention and to call for an inquiry when Mrs. Hume removed her husband from Ferncrest on May 3, 2009.” However, the record reflects that Mrs. Hume removed Mr. Hume from Ferncrest because of his fall the day before, Fern-crest’s failure to administer one of Mr. Hume’s medications, and Mr. Hume’s general unhappiness. Mrs. Hume alleged that she was unaware of Mr. Hume suffering from dehydration. Further, the trial court stated that “a board-certified nephrologist ... advised Mrs. Hume,” the day Mr. Hume was admitted to the hospital, “that Mr. Hume was suffering from Acute Renal Failure, likely secondary to dehydration.” Yet, there is no evidence in the record to show that the doctor advised Mrs. Hume of this diagnosis. While the diagnosis is contained in the medical records, there is no notation indicating that a nurse or a doctor discussed the diagnosis with Mrs. Hume. Contrariwise, there are notes indicating that doctors and staff discussed Mr. Hume’s lung nodule and upcoming hospice care with Mrs. Hume. Additionally, the Humes’ affidavits indicate that they believed Mr. Hume was dying of stomach cancer. As such, we find that it was reasonable for the Humes not to question Ferncrest’s treatment of Mr. Hume because Ferncrest’s care would not have caused the stomach cancer for which Mr. Hume was placed into hospice care.
The trial court also found that the Humes sought legal advice regarding Mr. | ^Hume’s treatment at Ferncrest within one year of May 3, 2009. However, this is not reflected in the record. Mr. and Mrs. Hume contracted with attorneys for a slip and fall that occurred in 2008. Mrs. Hume was in contact with the attorneys for the slip and fall case after Mr. Hume’s death. There is no evidence in the record to demonstrate that Mrs. Hume discussed Fern-crest with the attorneys prior to May 17, 2010. Accordingly, we find that the trial . court committed manifest error in finding that Mrs. Hume sought legal advice regarding Mr. Hume’s treatment at Fern-crest prior to May 3, 2009.
Because the doctrine of contra non va-lentum applied to prevent the commencement of prescription until the Humes discovered “the alleged act, omission, or neglect” by Ferncrest, the Humes’ petition was not prescribed on its face. Therefore, Ferncrest bore the burden to show that the matter prescribed. However, the record does not contain evidence sufficient to prove that the Humes knew of Mr. Hume’s diagnosis or cause of death. The evidence also fails to demonstrate that the Humes consulted with attorneys within a year from Mr. Hume leaving Ferncrest. Therefore, the Humes reasonably discovered Fern-crest’s malpractice in May 2010, and *242 timely filed suit. Accordingly, we find that the trial court erred in granting Ferncrest’s exception of prescription, and we reverse and remand for further proceedings.

DECREE

For the above-mentioned reasons, we find that contra non valentum applied to the facts and circumstances of the present case. The Humes’ discovery date of Fern-crest’s malpractice was reasonable in light of the fact that Mr. Hume was placed into hospice care with a diagnosis of stomach cancer, which was not associated with his care at Ferncrest. Further, we find that Ferncrest did not show 113that the Humes were in contact with attorneys regarding alleged malpractice within one year of May 3, 2009. Accordingly, we find that Fern-crest did not prove prescription had run prior to the filing of the lawsuit on May 19, 2010. Thus, the trial court erred in granting Ferncrest’s exception of prescription. We reverse and remand for further proceedings.
REVERSED AND REMANDED
LOBRANO, J., concurs in the result.

. Mr. Humes’ children are Delvin Louis Hume, David Louis Hume, Darren Ladd Hume, WenDee Hume DeLano, and David Leonard Hume.